UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------------X
                                         :

IN RE SEPTEMBER 11 PROPERTY DAMAGE   :      21 MC 101 (AKH)
AND BUSINESS LOSS LITIGATION        :

                                           :
-------------------------------------------------------------------X
                                         :

CONSOLIDATED EDISON COMPANY OF     :
NEW YORK, INC., et al.,                :      07 CV 10582 (AKH)

                        Plaintiffs,    :

                                         :

     - against -                 :

THE PORT AUTHORITY OF NEW YORK AND   :
NEW JERSEY,                       :

                        Defendant.   :
-------------------------------------------------------------------X

**MEMORANDUM OF LAW IN SUPPORT OF MOTION BY DEFENDANT THE PORT**
**AUTHORITY OF NEW YORK AND NEW JERSEY TO DISMISS THE COMPLAINT**

SCHIFF HARDIN LLP
900 Third Avenue
New York, New York  10022
Telephone:  (212) 753-5000

Attorneys for Defendant
The Port Authority of New York and New Jersey

Beth D. Jacob (BJ6415)
Donald A. Klein (DK7821)
Jeanne Cho (JC4631)

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ...................................................................................1

PROCEDURAL HISTORY AND STATEMENT OF FACTS ....................................2

   I.    Plaintiffs File Initial Complaint For Claims Accruing on September 11. ..........................2

   II.   Five Years Later, Plaintiffs Seek Leave to Supplement their  Amended Complaint With a New Breach of Contract Claim. .....................................................................4

   III.  Plaintiffs File a New Complaint Asserting the Same Contract Claims. ..............................5

   IV.  The Court Denies Plaintiffs Leave to Supplement. ..............................................6

   V.   Plaintiffs File a New Notice of Claim. ...............................................................7

   VI.  Plaintiffs File a Fifth Complaint Alleging the Same Contract Claims  Based on the Lease as Pleaded in the Third and Fourth Complaints. ................................7

   VII. Plaintiffs' Claims Under the Lease Are Wholly Inconsistent  With Positions They Previously Urged Successfully To This Court. ...................................8

ARGUMENT.............................................................................................................11

      POINT I    Since Plaintiffs' Claims Accrued More Than One Year Before Being Asserted, The Fifth Complaint Must Be Dismissed. .........................11

      POINT II   Plaintiffs' Fifth Complaint Violates  Rule 15(c) And The Rule Against Claim Splitting. ......................................................15

      POINT III  Plaintiffs Are Estopped From Taking A Position Contrary To One Taken Previously Before This Court. ........................................18

      POINT IV  The Complaint Fails To State A  Cause Of Action Because It Is Pleaded In General Terms. ..............................................22

CONCLUSION ........................................................................................................25

## TABLE OF AUTHORITIES

**Page**

## Cases

815 Park Ave. Owners, Inc. v. Fireman's Ins. Co. of Wash., D.C., 225 A.D.2d 350, 639
  N.Y.S.2d 325 (1st Dep't 1996)..................................................................................13, 14

A.I. Trade Fin., Inc. v. Centro Internationale Handelsbank AG, 926 F.Supp. 387
  (S.D.N.Y. 1996)......................................................................................................20

Ahrens v. Perot Sys. Corp., 205 F.3d 831 (5th Cir. 2000) ...........................................21

Allen v. Zurich Ins. Co., 667 F.2d 1162 (4th Cir. 1982).........................................20, 22

Am. Stock Exchange, LLC v. Mopex, Inc., 215 F.R.D. 87 (S.D.N.Y. 2002) ...........16, 17

Boston & Maine Corp. v. Town of Hampton, 987 F.2d 855 (1st Cir.1993) .................23

Cary v. Koener, 200 N.Y. 253 (1910) ......................................................................13

Coastal Plains, Inc. v. Mims, 179 F.3d 197 (5th Cir. 1999)......................................21

Coleman v. B.G. Suzle, Inc., 402 F. Supp. 2d 403 (N.D.N.Y. 2005)...........................17

Costello v. Allstate Ins. Co., 230 A.D.2d 763, 646 N.Y.S.2d 695 (2d Dep't 1996) ....14

Curtis v. Citibank, N.A., 226 F.3d 133 (2d Cir. 2000)..............................................16

Edwards v. Aetna Life Ins. Co., 690 F.2d 595 (6th Cir. 1982) ..................................21

Gaidon v. Guardian Life Ins. Co. of Am., 96 N.Y.2d 201 (2001)...............................12

Gaumont v. Warner Bros. Pictures, Inc., 2 F.R.D. 45 (S.D.N.Y. 1941) ......................15

Giannone v. Port Authority of New York and New Jersey, 127 A.D.2d 818, 511
  N.Y.S.2d 940 (2d Dep't 1987) ................................................................................12

Gillespie v. Ancona, 1999 WL 66538 (D.Conn., 1999)..............................................23

Hall v. GE Plastic Pacific PTE Ltd., 327 F.3d 391 (5th Cir. 2003) .............................22

In re Crazy Eddie Securities Litigation, 792 F. Supp. 197 (S.D.N.Y. 1992) ...............15

In re September 11 Property Damage and Business Loss Litigation, 468 F. Supp. 2d
  508 (S.D.N.Y. 2006)......................................................................................10, 19, 20

Kubin v. Miller, 801 F.Supp. 1101 (S.D.N.Y. 1992) .................................................19

Luciano v. Fanberg Realty Co., 102 A.D.2d 94, 475 N.Y.S.2d 854 (1st Dep't 1984)..................12

McKinnon v. Patterson, 568 F.2d 930 (2d Cir. 1977) ....................................................23

Mitchell v. Washingtonville Cent. School Dist., 190 F.3d 1 (2d Cir. 1999) .........................19, 20

Mroz v. City of Tonawanda, 999 F.Supp. 436 (W.D.N.Y. 1998) ....................................11

Mulligan v. The Port Authority of New York and New Jersey, 2002 WL 31233245
    (S.D.N.Y. Oct. 4, 2002) ............................................................................12

New Hampshire v. Maine, 121 S.Ct. 1808 (2001) .................................................19, 21

Privat Air, S.A. v. Port Authority of New York and New Jersey, 2007 WL 2089285
    (E.D.N.Y. July 19, 2007).............................................................................11

Rapture Shipping Ltd. v. Allround Fuel Trading B.V. Chemoil, 2006 WL 2474869
    (S.D.N.Y. Aug. 28, 2006)..........................................................................16, 17

Reynolds v. Comm'r of Internal Revenue, 861 F.2d 469 (6th Cir. 1988)....................................21

Scarano v. Cent. R. Co., 203 F.2d 510 (3d Cir. 1953) ..................................................19

Serko & Simon, LLP v. The Port Authority of New York and New Jersey, 02 Civ. 10052
    (S.D.N.Y. May 6, 2003) ............................................................................12

State of N.Y. v. Stewart's Ice Cream Co., 64 N.Y.2d 83 (1984) ....................................14

United States v. West Prods., Ltd., 168 F.Supp.2d 84 (S.D.N.Y. 2001)....................................20

Vaniman Int'l, Inc. v. Pirrone, 22 B.R. 166 (Bankr. S.D.N.Y. 1982) ....................................21

Vigilant Ins. Co. of Am. v. Housing Auth. of the City of El Paso, Tex., 87 N.Y.2d 36 (1995) ...13

## **Statutes**

F.R.C.P 8 ......................................................................................23, 24

F.R.C.P 15 .........................................................................................16

N.Y. Unconsol. Laws §§ 7101, 7107, 7108 ..............................................................11

## PRELIMINARY STATEMENT

The Port Authority of New York and New Jersey submits this memorandum of law in support of its motion to dismiss the latest Complaint, filed November 26, 2007 (the "Fifth Complaint") brought by Consolidated Edison and its subrogated insurers, which belatedly asserts new contract causes of action stemming from the destruction of the substation located below World Trade Center 7 on September 11, 2001. A copy of the Fifth Complaint is attached as Exhibit A to the Declaration of Beth D. Jacob in Support of Motion by Defendant the Port Authority of New York and New Jersey to Dismiss Plaintiffs' Complaint ("Jacob Dec.").

Plaintiffs' Fifth Complaint (their third complaint filed in the last six months against the Port Authority, all making the same allegations), seeks to assert the same long-expired contract claims that this Court rejected last year in denying plaintiffs' motion for leave to supplement. Plaintiffs now allege that under the operative lease for the substation between the Port Authority and Con Ed, the Port Authority was liable to Con Ed for damage suffered on September 11, 2001, regardless of fault on the part of the Port Authority. These claims are deficient for several reasons:

First, this Court lacks subject matter jurisdiction because they were not timely filed. As plaintiffs have conceded in prior proceedings before this Court, their claims accrued on September 11, 2001, and thus expired more than five years ago. They are barred under the one-year period prescribed for actions for money damages against the Port Authority by Section 7107 of the New York Unconsolidated Laws.

Second, plaintiffs' Fifth Complaint attempts to circumvent this Court's recent denial of their motion to supplement. Further, since plaintiffs' new claims are based on the same

facts and events as plaintiffs' claims in the existing lawsuit, they violate the well-settled rule in this Circuit that all such claims must be brought in a single lawsuit.

Third, these claims are barred by estoppel against inconsistent pleadings. In their related lawsuit against Citigroup Inc. and Citigroup Global Market Holdings Inc. (collectively "Citigroup"), a tenant of WTC7, plaintiffs successfully survived a motion to dismiss by arguing an interpretation of the lease that is directly opposite to the claims in their Fifth Complaint. At that time, plaintiffs ridiculed the claims they now assert as "fanciful," "imaginative," "strained," "absurd," "specious," and "beyond the contemplation of the lease agreement." Plaintiffs cannot now assert claims that are opposite to their prior position.

Fourth, the complaint fails to state a cause of action, even under the liberal pleading requirements of Rule 8. In both the first and second causes of action, plaintiffs merely recite a list of various activities which might have caused the destruction of the substation and form the basis for the Port Authority's alleged contractual obligation to pay Con Ed for its losses. These generalities do not give defendant any notice of what plaintiffs believe is the basis of defendant's liability.

Plaintiffs' Fifth Complaint should be dismissed.

## PROCEDURAL HISTORY AND STATEMENT OF FACTS[1]

### I.    Plaintiffs File Initial Complaint For Claims Accruing on September 11.

On September 11, 2001, World Trade Center 7 – an office building located across the street from the World Trade Center plaza – was hit by debris when the World Trade Center towers were struck by airplanes and then collapsed. After burning for most of the day, in the

---

[1] For purposes of this motion only, the Port Authority assumes the facts alleged in the Fifth Complaint to be true.

absence of water or firefighting efforts, WTC7 itself collapsed in the late afternoon. An electrical substation located underneath the WTC7 building was destroyed in that collapse. Jacob Dec. ¶ 2, Ex. A, ¶ 24. Plaintiffs' Fifth Complaint, as with their four previous complaints against the Port Authority and their additional complaint against Citigroup and a number of other defendants, arises out of the events of that day and in particular from the destruction of the substation on September 11.

The Con Ed substation was constructed in 1970 and was located below WTC7. Jacob Dec. ¶ 2, Ex. A, ¶¶ 1, 15. It was built pursuant to the terms of a lease entered into by the Port Authority, as the owner of the property, and Con Ed, as the operator of the substation, in 1968 (the "Lease"). *Id.* at ¶ 14. Its purpose was to provide electrical power to the World Trade Center complex and the surrounding area. *Id.* at ¶ 15.

Within one year of September 11, 2001, Con Ed and its insurers filed a complaint (02 CV 7188) against the Port Authority asserting that the Port Authority had negligently designed, constructed, maintained and operated the premises of WTC7 and thereby had caused the destruction of the Con Ed substation (the "Initial Complaint").[2] *See* Jacob Dec. ¶ 3, Ex. B, ¶¶ 28, 35. Plaintiffs' Initial Complaint contained a three-word reference to "breach of contract" without further explanation, *id.* at ¶ 28, and to "breach of lease" meaning the allegedly negligent design, construction, maintenance and operation of WTC7, *id.* at ¶ 29.

The June 11, 2002, Notice of Claim that plaintiffs served as a precursor to the Initial Complaint stated that plaintiffs' claims accrued on September 11, 2001. Jacob Dec. ¶ 4, Ex. C, ¶ 3. It did not include a breach of contract claim. In April 2004, the Port Authority moved to dismiss plaintiffs' Amended Complaint, arguing, *inter alia*, that the breach of contract claim

---

[2] Plaintiffs amended the complaint on December 9, 2003, adding the City of New York as a defendant (the "Amended Complaint" or "Second Complaint"). Jacob Dec. ¶ 5, Ex. D.

summarily referenced by plaintiffs in their Amended Complaint, but not included in their Notice of Claim, should be dismissed. In response, plaintiffs argued that "the 'contractual' claims asserted by plaintiffs herein are identical, on the facts, to the 'negligence' claims set forth in the Notice of Claim, i.e., both required a showing of defendant's 'wrongful conduct' . . . ." Jacob Dec. ¶ 10, Ex. I at 12. At oral argument on the Port Authority's motion to dismiss for failure to include the contract claim in the Notice of Claim, this Court (speaking of a similar argument with respect to another plaintiff's notice of claim that was expressly adopted with respect to plaintiffs) concluded that the reference to "breach of contract" in the Amended Complaint was merely contextual: "[T]he contract is the context. The negligence is what's actionable." Jacob Dec. ¶ 11, Ex. J at 27:16-17, 29:22 - 30:3.

During the more than five years since plaintiffs commenced their initial lawsuit, over 800,000 pages of documents have been produced in the WTC7 ground litigation, and the parties have filed and briefed numerous motions and taken the deposition testimony of about twenty witnesses. Jacob Dec. ¶ 17.

## II.    Five Years Later, Plaintiffs Seek Leave to Supplement their Amended Complaint With a New Breach of Contract Claim.

On August 16, 2007 – nearly six years after September 11, 2001 and nearly five years after they first sued the Port Authority – plaintiffs filed a motion to supplement seeking to add a new contract claim to the Amended Complaint. This new claim, contained in a proposed supplemental complaint (the "Third Complaint"), was based on a claimed breach of the Lease. For the first time, plaintiffs asserted that the Port Authority had an obligation under Section 16 of the Lease to repay Con Ed for damage suffered on September 11, 2001 "arising from the Port Authority's acts or omissions in connection with the construction or maintenance of 7 WTC,

regardless of fault on the part of the Port Authority." Jacob Dec. ¶ 12, Ex. K at 5. The Third
Complaint was substantively the same as the current Fifth Complaint.

## III.    Plaintiffs File a New Complaint Asserting the Same Contract Claims.

Even before this Court ruled on plaintiffs' motion to supplement, on September 11, 2007,
plaintiffs filed another complaint (07 CV 7969) alleging the same breach of contract claims as in
their Third and Fifth Complaints and seeking the same amount of damages (the "Fourth
Complaint"). Jacob Dec. ¶ 14, Ex. M, ¶¶ 39, 49. The Fourth Complaint also included a second
cause of action, based on the same theory of a breach of an alleged contractual obligation to pay
under Section 16 of the Lease but alleging that the destruction of the substation was caused by
the Port Authority's negligence. Jacob Dec. ¶ 14, Ex. M, ¶¶ 40-49. The Fourth Complaint was
filed exactly six years after September 11, 2001; the New York statute of limitations for contract
actions is six years from date of accrual.

In their Fourth Complaint, plaintiffs alleged that the statutory notice of claim requirement
with respect to the new contract claims was satisfied by their June 11, 2002 Notice of Claim,
which stated that plaintiffs' claims accrued on September 11, 2001. *See* Jacob Dec. ¶ 15, Ex. N
at 10:4-12. At oral argument on September 20, 2007, the Court noted that plaintiffs' position
that they had given notice of their new contract claims in June 2002 meant that the claims had to
have accrued before that date. Therefore, they had not been filed within one year of accrual as
Section 7107 of the New York Unconsolidated Laws requires. *Id.* at 10:1-22. Explaining feebly
that "[t]hat complaint was really just filed out of an abundance of caution," plaintiffs then
withdrew the Fourth Complaint and the Court declined to consider it. *See* Jacob Dec. ¶ 15, Ex. N
at 10:13-14, 22.

**IV.    The Court Denies Plaintiffs Leave to Supplement.**

This Court denied plaintiffs' motion to supplement to add the new contract claim under the Lease at oral argument. Jacob Dec. ¶ 15, Ex. N at 21:2-7. As plaintiffs conceded, they had failed to comply with the statutory prerequisite of serving a notice of claim on the Port Authority. Indeed, plaintiffs offered to serve the Port Authority at oral argument with a new notice of claim. *Id.* at 5:5 - 6:6.

Moreover, as the Court also noted, plaintiffs' new contract claims were untimely by about five years, since plaintiffs were required by statute to assert them within one year of the accrual date of September 11, 2001. *Id.* at 8:18-9:7; 22:19-22. Plaintiffs argued that these new contract claims – unlike the contract claims for damages asserted in their Initial and Amended Complaints or the identical contract claims in their Third and Fourth Complaints – accrued on June 7, 2007, not September 11, 2001, because the Port Authority had allegedly disclaimed any present obligation to indemnify Con Ed under the Lease on that date. *See* Jacob Dec. ¶ 15, Ex. N at 5:1-2, *see also* 22:19-22.

The Court rejected the argument that plaintiffs' contract claims had only recently accrued, *id.* at 18:2-3, and noted that plaintiffs' proposed contract theory was not really new in any event. *Id.* at 19:3-5 ("[T]his is not a brand new cause of action . . ."). The Court emphasized that all of plaintiffs' claims regarding the destruction of the Con Ed substation accrued on September 11, 2001, stating that the new proposed claim went "back to the original claim, what was destroyed on September 11, 2001," and was part of the same "ball of wax." *Id.* at 18:3-6, 22.

**V.    Plaintiffs File a New Notice of Claim.**

On September 21, 2007, the day after this Court denied plaintiffs' motion for leave to supplement, plaintiffs served a new notice of claim upon the Port Authority for the same contract claims under the Lease.  Plaintiffs' new notice of claim asserted the same accrual date – June 7, 2007 – that this Court had rejected only the day before.  The notice of claim relied on a May 18, 2007, demand letter from plaintiffs to the Port Authority which set a deadline for payment of June 7, 2007.  Jacob Dec. ¶ 16, Ex. O.  Plaintiffs charged in the May 18 letter that the Port Authority had refused to make payments beginning as early as February 2006, well over one year earlier.  *Id.*  Thus, even if plaintiffs were correct that their contract claims accrued on the date that the Port Authority first refused to pay them, by their own argument their new contract claims would have accrued no later than February 2006, and therefore expired February 2007.[3]

**VI.    Plaintiffs File a Fifth Complaint Alleging the Same Contract Claims Based on the Lease as Pleaded in the Third and Fourth Complaints.**

Plaintiffs filed their Fifth Complaint, the subject of this motion to dismiss, on November 26, 2007.  In the Fifth Complaint, plaintiffs assert the same contract claims for indemnification under the Lease that the Court already rejected in denying plaintiffs' motion to supplement:  that the Port Authority had an obligation to indemnify Con Ed under Section 16 of the Lease for damage suffered on September 11 "arising from the Port Authority's acts or omissions in

_____

[3] Plaintiffs point to the Port Authority's payment of $20 million to Con Ed as somehow acknowledging their pleaded indemnification theory.  Jacob Dec. ¶ 2, Ex. A, ¶ 41.  As noted at oral argument, however, that payment was nothing more than an advance of the proceeds of the insurance policy to cover the costs of rebuilding the substation which the Port Authority purchased pursuant to the Lease, as Con Ed's employee Joseph Lynch acknowledged in his declaration in support of their motion to supplement.  *See* Jacob Dec. ¶ 13, Ex. L, ¶ 3 ("Con Edison received a check from Port Authority in the amount of $20,000,000 in partial payment under this insurance obligation.").  The Port Authority does not contest that it should pay over to Con Ed insurance payments for rebuilding the substation when they are received, but denies any other liability to plaintiffs under the Lease.  In any event, that payment was made June 3, 2004 – over three years before plaintiffs commenced this action.

- 7 -

connection with the construction or maintenance of 7 WTC, regardless of fault on the part of the Port Authority." Jacob Dec. ¶ 2, Ex. A, ¶ 31. The first count alleges that the "Port Authority, by act and omission in the design, approval, inspection, installation, alteration, maintenance, operation, conduct and control" of WTC7 caused the destruction of the substation. *Id.* at ¶ 37. The second count alleges that the "Port Authority was negligent, careless and reckless by act and omission in the design, approval, inspection, installation, alteration, maintenance, operation, conduct and control" of WTC7 and caused the destruction of the substation. *Id.* at ¶ 47. Both counts plead that as a result of the Port Authority's conduct – negligent or not – it is obliged to pay Con Ed under Section 16 of the Lease. These claims are substantially identical to those in the Fourth Complaint, as to which plaintiffs pleaded that notice had been given five years earlier. Plaintiffs nowhere explain how a claim for damages from the destruction of the substation accrued on September 11, 2001, but a claim for payment of those damages somehow is different and accrued six years later.

**VII.    Plaintiffs' Claims Under the Lease Are Wholly Inconsistent With Positions They Previously Urged Successfully To This Court.**

Plaintiffs' contract claims for indemnification asserted in the Fifth Complaint are inconsistent with previous positions they successfully asserted before this Court in a related action. In 2004, plaintiffs brought suit against Citigroup, claiming that it had negligently designed, constructed and used an emergency generator system in WTC7.[4] Citigroup sought to dismiss plaintiffs' complaint on the ground that plaintiffs' sole remedy was against the Port Authority under the Lease and in the course of that argument advanced the same interpretation of

---

[4] The suit against Citigroup, 02 CV 7272, includes a number of other defendants and has been consolidated for pretrial purposes with plaintiffs' suit against the Port Authority in the WTC7 Ground Litigation as well as with other September 11 property damages cases in Master Docket 21 MC 101.

the Lease provisions that plaintiffs now assert in the Fifth Complaint. Jacob Dec. ¶ 6, Ex. E at 13-17. Citigroup summarized its argument based on Sections 8 and 16 of the Lease as "the Port Authority agreed, for the benefit of the future tenants of 7WTC, to bear responsibility for any damage that the structure might cause." *Id.* at 16-17. Citigroup argued that Con Ed's remedy was limited to its claim against the Port Authority. *Id.*

Plaintiffs strenuously opposed Citigroup's interpretation of the Lease. Citigroup's argument, as described by plaintiffs then, was that under Section 16 of the Lease, the Port Authority is "an indemnitor of any tenant, occupant, licensee, etc., on the 7WTC premises, completely apart from any negligence on its own part." Jacob Dec. ¶ 7, Ex. F at 13. Plaintiffs ridiculed this interpretation of the Lease as "fanciful," "imaginative," "wishful thinking," "strained," "ridiculous," "absurd," "specious," and "beyond the contemplation of the lease agreement." *Id.* at 9-14. Plaintiffs argued, first, that Sections 8 and 16 "on their face," applied only to the time of the original construction and related maintenance of WTC7 and could not cover "premises defect[s]" allegedly leading to the September 11 collapse 20 years later:

> The first problem with Citigroup's imaginative interpretation is that on their face, these lease provisions [Sections 8 and 16] deal with damage which occurs 'in connection with construction or maintenance' to structures above the substation. Since Citigroup has acknowledged that it completed construction of, *inter alia*, its fuel distribution apparatus in 1990, the 2001 collapse at issue here is not 'in connection with' construction or maintenance of 7WTC.

> ***

> Moreover, the provisions at issue here concern only "acts or omissions" of PA and its agents "in connection with the construction or maintenance of" the future structure. This clearly means construction or maintenance of the building, not any premises defect case which might arise 20 years later.

*Id.* at 11-12.

- 9 -

Plaintiffs also rejected any interpretation of Sections 8 and 16 that would make the Port Authority the "indemnitor," without regard to its own fault, of other tenants of WTC7, including plaintiffs:

> Indeed, the interpretation urged by Citigroup has an additional flaw: it seeks to make the PA an indemnitor of any tenant, occupant, licensee, etc., on the 7WTC premises, completely apart from any negligence on its own part. . . . Accordingly, they believe that the contract implies one of two absurd results: either Con Ed can only sue PA for damage to the Substation, and must "eat" any damage caused by anyone else . . . or, Con Ed can sue and hold PA liable for damages caused to Con Ed by parties other than the PA (e.g. Citigroup and its co-defendants) and as to which the PA itself is not negligent.

Jacob Dec. ¶ 7, Ex. F at 13.

After a discussion of the disputed Lease provisions, this Court ruled in plaintiffs' favor and denied Citigroup's motion to dismiss.[5] *In re September 11 Property Damage and Business Loss Litigation,* 468 F. Supp. 2d 508, 525-27 (S.D.N.Y. 2006) (Hellerstein, J.). The opinion discussed Sections 8 and 16 of the Lease, the same sections at issue in the Fifth Complaint, as "relevant to my analysis" of Citigroup's motion to dismiss. *Id.* at 520. The Court denied Citigroup's motion on the ground that it was not prepared before factual discovery to "parse the operative clauses and agreements" of the Lease in light of the dispute over the meaning of those sections. *Id.* at 526-527. Thus, Con Ed prevailed in opposing Citigroup's motion based on its vigorous arguments against Citigroup's interpretation of Sections 8 and 16 of the Lease.

Citigroup's proposed interpretation of Sections 8 and 16 – which plaintiffs strenuously and successfully opposed in winning a significant ruling from this Court – is the same as the

---

[5] The Port Authority was not (and still is not) a party to that action. With the Court's permission, it made a supplemental submission explaining that Citigroup's interpretation of the Lease was mistaken and identifying the various agreements between it and Citigroup or Citigroup's contractors under which Citigroup agreed to indemnify the Port Authority for any liability arising from Citigroup's work in the building. Jacob Dec. ¶ 8, Ex. G.

claim plaintiffs now assert in their Fifth Complaint. In stark contrast to their position against Citigroup's motion labeling as "absurd" a reading of the Lease that Con Ed could hold the Port Authority liable for damages caused to Con Ed as to which the Port Authority itself was not negligent, *see* Jacob Dec. ¶ 7, Ex. F at 9-14, plaintiffs now allege:

> [Section 16] obligat[es] the Port Authority to indemnify Con Edison for damage arising from the Port Authority's acts or omissions in connection with the construction or maintenance of the Building, regardless of fault on the part of the Port Authority.

Jacob. Dec. ¶ 2, Ex. A, ¶ 31.

Plaintiffs' first cause of action for breach of contract is based on this theory of liability without regard to fault, and contains no allegation of negligence or other fault on the part of the Port Authority. Plaintiffs' second cause of action is based on negligence leading to the collapse of WTC7. Both claim that the Port Authority's obligation to pay for Con Ed's damages arising from its acts and omissions, regardless of fault, is found in Section 16 of the Lease. Plaintiffs' Fifth Complaint seeks to hold the Port Authority liable for claims that plaintiffs argued to this Court could not be brought under the Lease.

## ARGUMENT

### POINT I

### SINCE PLAINTIFFS' CLAIMS ACCRUED MORE THAN ONE YEAR BEFORE BEING ASSERTED, THE FIFTH COMPLAINT MUST BE DISMISSED.

Plaintiffs' failure to bring their claims within one year of accrual deprives this Court of subject matter jurisdiction over them. *Privat Air, S.A. v. Port Authority of New York and New Jersey*, 2007 WL 2089285, at *1-2 (E.D.N.Y. July 19, 2007) (*citing Mroz v. City of Tonawanda*, 999 F. Supp. 436, 454 (W.D.N.Y. 1998); *see* Memorandum of Law in Support of Motion by

Defendant The Port Authority of New York and New Jersey to Dismiss Plaintiffs' Complaints, dated April 30, 2004, at 27-35, which is incorporated by reference herein and attached to the Jacob Dec. as Exhibit H.

In order to bring suit against the Port Authority, a party must satisfy certain mandatory jurisdictional conditions precedent. Section 7107 of the New York Unconsolidated Laws provides that before a suit can be filed against the Port Authority, a notice of claim must be "served upon the Port Authority . . . at least sixty days before such suit . . . is commenced." Section 7107 further provides that the suit must "be commenced within one year after the cause of action therefore shall have accrued." Strict compliance with these provisions is required as a condition of waiver of the Port Authority's sovereign immunity. N.Y. Unconsol. Laws §§ 7101, 7107, 7108; *Serko & Simon, LLP v. The Port Authority of New York and New Jersey*, 02 Civ. 10052 (S.D.N.Y. May 6, 2003) (Hellerstein, J.) (N.Y. Unconsol. Laws §§ 7107 and 7108 set out the mandatory jurisdictional conditions precedent to bringing a suit against the Port Authority) (*see* Jacob Dec. ¶ 19, Ex. Q); *Mulligan v. The Port Authority of New York and New Jersey*, 2002 WL 31233245, at *1 (S.D.N.Y. Oct. 4, 2002) (Hellerstein, J.) (same); *Giannone v. Port Authority of N. Y. and N. J.*, 511 N.Y.S.2d 940, 941 (2d Dep't 1987) (consent to suits is expressly predicated "upon compliance with certain conditions" that are both "mandatory" and "jurisdictional"); *Luciano v. Fanberg Realty Co.*, 475 N.Y.S.2d 854, 855 (1st Dep't 1984) (consent conditioned "upon compliance with certain jurisdictional conditions precedent").

Under New York law, plaintiffs' contract claims under the Lease accrued when "all of the factual circumstances necessary to establish a right of action have occurred, so that the plaintiff would be entitled to relief." *Gaidon v. Guardian Life Ins. Co. of Am.*, 96 N.Y.2d 201, 210 (2001); *Vigilant Ins. Co. of Am. v. Housing Auth. of the City of El Paso, Tex.*, 87 N.Y.2d 36,

43 (1995) (same); *Cary v. Koener*, 200 N.Y. 253, 259 (1910) ("The time when the cause of action has accrued . . . means the time when the plaintiff first became enabled to maintain the particular action in question." (internal quotations omitted)).

Here, plaintiffs claim under the Lease that the Port Authority is liable to plaintiffs for damages suffered on September 11, 2001, regardless of the Port Authority's fault. Like their parallel negligence claim from the Initial Complaint, these contract claims accrued the moment that plaintiffs suffered the losses for which they seek damages – that is, on September 11 when the plaintiffs' substation was destroyed. Indeed, plaintiffs so recognized in their Fifth Complaint. *See* Jacob Dec. ¶ 2, Ex. A, ¶¶ 24-25 ("The collapse of the Building completely destroyed the Substation. As a result of the collapse of the Building, Con Edison's substation, cables, equipment and other property were destroyed."), ¶ 8 ("Con Edison and the Aegis insurers suffered damages as a result of the destruction of the Substation"). If plaintiffs' current interpretation of the Lease were correct, then they would have had the right to payment on September 11, 2001, when the Port Authority's obligation to pay arose with the destruction of the substation.

Although plaintiffs mischaracterize their contract claims as indemnity claims, the accrual date would be no different if they were. The limitations period for indemnification claims for property damage begins to run on the date of the property damage, without the necessity for any demand by the plaintiff or rejection by the defendant. *See, e.g., 815 Park Ave. Owners, Inc. v. Fireman's Ins. Co. of Wash., D.C.*, 225 A.D.2d 350, 352, 639 N.Y.S.2d 325, 327 (1st Dep't 1996). In *815 Park Ave.*, the First Department held that the plaintiff's claim for indemnification under an insurance policy accrued as of the date of the property damage for which indemnification was sought. Although the plaintiff also claimed indemnification for ongoing

monetary damages (lost rents) as a result of the property damage, the Court rejected the plaintiff's contention that its indemnification claim for such lost rents did not arise until their amount had been ascertained, and held instead that the claim for lost rents also accrued as of the date of the property damage. 225 A.D.2d at 351-52, 639 N.Y.S.2d at 351-352; *see also Costello v. Allstate Ins. Co.*, 230 A.D.2d 763, 646 N.Y.S.2d 695, 696 (2d Dep't 1996) (plaintiff's claim for indemnification under an insurance policy for property damage accrued on "the date of the catastrophe insured against"); *State of N.Y. v. Stewart's Ice Cream Co.*, 64 N.Y.2d 83, 88 (1984) (affirming the "traditional view that an action for indemnity accrues when any loss is suffered by the party seeking indemnity") (internal quotation marks and citations omitted).

In fact, plaintiffs have already agreed that their claims for damages from the destruction of the substation arose on September 11, 2001. Their original June 11, 2002, notice of claim stated that such claims accrued on September 11, 2001. Their Fourth Complaint, which contained identical contract claims to those in the Fifth Complaint, alleged that plaintiffs had given notice of such claims in June 2002. Notably, plaintiffs filed the Fourth Complaint exactly six years after September 11, 2001, presumably to fall within the general six-year statute of limitations for contract claims that they apparently hoped applied instead of the one-year deadline applicable to claims for money damages against the Port Authority.

Plaintiffs' claims do not accrue on an arbitrary date set by them in a demand letter. Even if they did, however, plaintiffs' argument is unavailing. Plaintiffs contended in their May 18, 2007, demand letter (on which their new notice of claim relies) that the Port Authority has been refusing their demands for additional payment since at least February 2006. *See* Jacob Dec. ¶ 16, Ex. O. Thus, even under plaintiffs' sliding theory of accrual, their indemnification claims accrued no later than February 2006 and therefore the claims in the Fifth Complaint expired no

later than February 2007, nine months before it was filed. To the extent that the second claim in the Fifth Complaint pleads a negligence-contract action that is different from the one asserted in the Initial and Amended Complaints, it accrued no later than the strict liability claim.

Since plaintiffs have not satisfied the mandatory prerequisites to bringing suit against the Port Authority, this Court lacks subject matter jurisdiction to entertain their new claims. Plaintiffs' contract-based claims accrued on September 11, 2001, when its substation was destroyed. Even under plaintiffs' approach that its claims accrued when its demand letter was not answered, its claims accrued no later than February 2006. Plaintiffs did not file their new contract claims within one year of their accrual date. Plaintiffs' Fifth Complaint must be dismissed.

## POINT II

### PLAINTIFFS' FIFTH COMPLAINT VIOLATES RULE 15(c) AND THE RULE AGAINST CLAIM SPLITTING.

Plaintiffs' Fifth Complaint asserts the same claim as the Third Complaint, which was attached to their motion to supplement. It is an attempt to circumvent this Court's rejection of that Third Complaint. Plaintiff cannot avoid this Court's denial of their motion by simply commencing a new action.

As plaintiffs recognized by moving to supplement their existing complaint, the proper procedure to add claims to an already existing litigation is to file a motion pursuant to Rule 15. F.R.C.P. 15; *e.g., In re Crazy Eddie Securities Litigation*, 792 F. Supp. 197, 204 (S.D.N.Y. 1992); *Gaumont v. Warner Bros. Pictures, Inc.*, 2 F.R.D. 45, 46 (S.D.N.Y. 1941) (service of amended pleading without obtaining leave of the court pursuant to Rule 15 was without legal effect); *see also* 6 Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice*

*and Procedure* § 1484 (1990) ("In general, if an amendment that cannot be made as of right is served without obtaining the court's leave or the opposing party's consent, it is without legal effect . . ."). A plaintiff that has been denied leave to amend cannot assert the same claims by filing a new complaint if the claims could have been asserted in the original complaint.

In *Curtis v. Citibank, N.A.*, 226 F.3d 133 (2d Cir. 2000), for example, the plaintiff sued her employer for race and gender discrimination and sought leave to amend to add claims of, *inter alia*, constructive discharge and pattern of discrimination. After leave to amend was denied, the plaintiff filed the same claims as a new action, which the court dismissed. *Id.* at 136. The Second Circuit held that plaintiff was properly barred from filing a new lawsuit asserting claims that could have been asserted in plaintiff's original complaint, although new non-duplicative claims would be allowed. *Id.* at 140.

> [M]uch of the second amended complaint alleged events that had occurred prior to *Curtis I*'s filing. If plaintiffs had timely raised those allegations, they would have been heard in *Curtis I*. By filing them in a second action, plaintiffs attempted to avoid the consequences of their delay. It was not an abuse of discretion to prevent them from doing so.

*Id.*; *see also Am. Stock Exchange, LLC v. Mopex, Inc.*, 215 F.R.D. 87, 91 (S.D.N.Y. 2002) (in a patent infringement action, when the court denied as untimely leave to amend to include infringement of an additional claim of the same patent, plaintiffs would be barred from asserting infringement of that claim in a new action).

It is axiomatic that "plaintiffs have no right to maintain two actions on the same subject in the same court, against the same defendant at the same time." *Rapture Shipping Ltd. v. Allround Fuel Trading B.V. Chemoil*, 2006 WL 2474869, at *3 (S.D.N.Y. Aug. 28, 2006) (dismissing plaintiff's second action seeking a different remedy of attachment but based on the same facts as an earlier action in which plaintiff sued for damages), quoting *Curtis*, 226 F.3d at

- 16 -

138-139. The rule against claim splitting requires a plaintiff to assert all its legal theories based on the same facts or transactions in a single action. "It is well established, under the doctrine of claim splitting, that a party . . . must bring in one action all legal theories arising out of the same transaction or series of transactions." *Am. Stock Exchange*, 215 F.R.D. at 91 (plaintiffs could not bring a new action asserting a factually duplicative claim) (internal quotation marks and citations omitted); *see also Coleman v. B.G. Suzle, Inc.*, 402 F. Supp. 2d 403, 419-421 (N.D.N.Y. 2005) (employee plaintiff who had filed a previous lawsuit alleging discrimination and retaliation could not file a new Section 1981 action alleging retaliatory discharge). "Plaintiffs may not file duplicative complaints in order to expand their legal rights." *Rapture Shipping*, 2006 WL 2474869 at *1. When subsequent claims are duplicative, or part of one "ball of wax," it is entirely proper to dismiss them.

Plaintiffs' Fifth Complaint and their Initial Complaint indisputably arise out of the same set of facts. Both actions arise entirely from the events of September 11, 2001, and contain similar allegations of improper design and negligence on the part of the Port Authority. *Compare, e.g.*, Jacob Dec. ¶ 5, Ex. D, ¶ 35 *with* Jacob Dec. ¶ 2, Ex. A, ¶¶ 47-48. Indeed, most of the factual allegations in the Fifth Complaint are taken verbatim from the Initial Complaint. The Fifth Complaint quotes at length from the Lease (*see* Jacob Dec. ¶ 18, Ex. P, ¶¶ 29-35); the Initial Complaint recited the existence of the Lease and asserted, among other things, that the Port Authority had breached its contractual obligations under the Lease. *See* Jacob Dec. ¶ 5, Ex. D, ¶¶ 9-10, 35; *see also* Jacob Dec. ¶ 10, Ex. I at 9-17. Plaintiffs are attempting to "split[] [their] cause of action into separate grounds of recovery and then rais[e] the separate grounds in successive lawsuits." *Am. Stock Exchange, supra*, 215 F.R.D. at 91. This Court has already

denied plaintiffs' leave to supplement their existing complaint to add these claims, and should not now allow plaintiffs to assert them in a new action.

## POINT III

### PLAINTIFFS ARE ESTOPPED FROM TAKING A POSITION CONTRARY TO ONE TAKEN PREVIOUSLY BEFORE THIS COURT.

Plaintiffs are estopped from pleading a position they previously opposed – forcefully and successfully – before this Court. In its motion to dismiss, Citigroup argued that plaintiffs' sole remedy for its damages from the loss of the substation is against the Port Authority. Citigroup moved to dismiss plaintiffs' complaint against it on the exact ground that plaintiffs assert in this action: that under Sections 8 and 16 of the Lease, the Port Authority is liable for Con Ed's damages suffered on September 11, 2001. *See* Jacob Dec. ¶ 7, Ex. F at 9-12.[6] At that time, plaintiffs rejected this interpretation of the Lease, claiming that the Port Authority had no liability under Section 16 for the events of September 11. Plaintiffs argued, first, that Section 16 applied only to the original construction and related maintenance of WTC7, not to design flaws that allegedly caused its collapse 20 years later, and, second, that it created no indemnification obligation by the Port Authority in any event. Indeed, plaintiffs did not merely oppose Citigroup's position, they ridiculed it as "fanciful," "imaginative," "wishful thinking,"

---

[6] Plaintiffs were right to oppose this interpretation of the Lease in the Citigroup case and wrong to assert it now. First, it would render Section 18(c) of the Lease, which deals in full with the consequences of the destruction of the premises by the "public enemy," either redundant or without force. Jacob Dec. ¶ 18, Ex. P. Second, it adopts a strained reading of Section 8(a) to impose unintended liability on the Port Authority for allegedly negligent design and maintenance of WTC7 nearly twenty years after construction. Third, although citing Section 8(a), it ignores Section 8(b) entirely, which provides that the Port Authority's exercise of its right to construct WTC7 could not give rise to any claim for damages by Con Ed. Under plaintiff's current reading of Sections 8 and 16 as applying to damages years after the completion of construction, Section 8(b) would bar plaintiffs from bringing any claim against the Port Authority.

"strained," "ridiculous," "absurd," "specious," and "beyond the contemplation of the lease

agreement." *See* Jacob Dec. ¶ 7, Ex. F at 9-12. Relying on plaintiffs' arguments advocating

another interpretation of the Lease, this Court denied Citigroup's motion to dismiss on the

ground that the Court was not prepared before factual discovery to "parse the operative clauses

and agreements" of the Lease (*i.e.*, Sections 8 and 16), in light of the parties' dispute over those

provisions. *In re September 11 Property Damage and Business Loss Litigation*, 468 F.Supp.2d

at 526-27.

Plaintiffs are now barred by estoppel against inconsistent pleadings from commencing a

new action based on a claim they successfully opposed in an earlier action. Estoppel against

inconsistent pleadings (which is also referred to as judicial estoppel) "precludes a party from

framing his pleadings in a manner inconsistent with a position taken in a prior proceeding."

*Kubin v. Miller*, 801 F.Supp. 1101, 1111 (S.D.N.Y. 1992) (plaintiff who claimed to be a New

York domiciliary in a prior action to invoke the court's diversity jurisdiction was estopped from

claiming that he was a Connecticut domiciliary in a later action); *Mitchell v. Washingtonville*

*Cent. School Dist.*, 190 F.3d 1, 6 (2d Cir. 1999) ("Judicial estoppel prevents a party from

asserting a factual position in a legal proceeding that is contrary to a position previously taken by

that party in a prior legal proceeding.") (internal quotation marks and citations omitted). As the

Supreme Court of the United States has held, the purpose of the doctrine "is to protect the

integrity of the judicial process by prohibiting parties from deliberately changing positions

according to the exigencies of the moment." *New Hampshire v. Maine*, 532 U.S. 742, 750

(2001) (internal quotation marks and citations omitted). It "prevents parties from 'playing fast

and loose with the courts.'" *Id.*, *quoting Scarano v. Cent. R. Co.*, 203 F.2d 510, 513 (3d Cir.

1953).

In arguing one interpretation of the Lease in order to maintain its claim against Citigroup, then asserting the opposite interpretation in order to assert a claim against the Port Authority, plaintiffs' actions exemplify the "fast and loose" conduct to suit the "exigencies of the moment" condemned by the Supreme Court.

Plaintiffs' conduct meets the requirements for judicial estoppel in this Circuit: (1) the party against whom the estoppel is asserted took an inconsistent position in a prior proceeding, and (2) that position was adopted by the first tribunal in some manner, *Mitchell*, 190 F.3d at 6, although there are no "inflexible prerequisites or an exhaustive formula for determining the applicability of judicial estoppel." *New Hampshire*, 532 U.S. at 751; *Allen v. Zurich Ins. Co.*, 667 F.2d 1162, 1166 (4th Cir. 1982) ("The circumstances under which judicial estoppel may appropriately be invoked are probably not reducible to any general formulation of principle.").[7] There can be no dispute that plaintiffs took an "inconsistent position" on the meaning of the Lease in opposing Citigroup's motion to dismiss. Moreover, this Court stated that Sections 8 and 16 of the Lease were "relevant to [its] analysis" of Citigroup's motion to dismiss and analyzed both provisions before denying Citigroup's motion. *In re September 11 Property Damage and Business Loss Litigation*, 468 F.Supp.2d at 520. The Court credited Con Ed's interpretation of the Lease as providing a basis for ruling in plaintiffs' favor that discovery was needed to support Citigroup's interpretation of the Lease. Had plaintiffs acquiesced in Citigroup's interpretation of Section 16 and taken then the position now asserted in the Fifth Complaint, its complaint against Citigroup may very well have been dismissed.

---

[7] Reliance by, or prejudice to, the party seeking estoppel is not a requirement in the Second Circuit. *A.I. Trade Fin., Inc. v. Centro Internationale Handelsbank AG*, 926 F.Supp. 387, 389 (S.D.N.Y. 1996). The doctrine exists to protect the integrity of the judicial process, not to avoid unfairness to the litigants. *United States v. West Prods., Ltd.*, 168 F.Supp.2d 84, 90 n.7 (S.D.N.Y. 2001).

The Court's consideration of plaintiffs' arguments in denying Citigroup's motion to dismiss is sufficient to give rise to an estoppel; there is no requirement that plaintiffs have prevailed on the merits in a final judgment or that the Court have explicitly adopted plaintiffs' arguments. *See, e.g.*, *Reynolds v. Comm'r of Internal Revenue*, 861 F.2d 469, 473 (6th Cir. 1988) ("the 'prior success' requirement does not mean that the party against whom the judicial estoppel is to be invoked must have prevailed on the merits. Rather, judicial acceptance means only that the first court has adopted the position urged by the party, either as a preliminary matter or as part of a final disposition.") (internal quotation marks and citations omitted); *Edwards v. Aetna Life Ins. Co.*, 690 F.2d 595, 599 n.5 (6th Cir. 1982) (same) (*cited with approval* in *New Hampshire v. Maine*, 532 U.S. at 750); *Coastal Plains, Inc. v. Mims*, 179 F.3d 197, 206 (5th Cir. 1999) (debtor that failed to disclose in its bankruptcy filing the existence of valuable claims against the defendant and then persuaded the bankruptcy court to lift the automatic stay based in part on the argument that the debtors' intangible assets were worth little, could not later prosecute the non-disclosed claims against the defendant).

In *Ahrens v. Perot Sys. Corp.*, 205 F.3d 831, 835-36 (5th Cir. 2000), for example, a plaintiff avoided remand to state court by asserting that her employment had been terminated because of tortious interference and that the defendants who had allegedly interfered were thus not fraudulently joined. Plaintiff then sued her employer in a new action under the Americans with Disabilities Act claiming discriminatory discharge. The court held that, even though the first court had not entered any judgment on the merits, she was estopped from asserting a basis for dismissal significantly different from the arguments asserted in successfully avoiding remand. *See also Vaniman Int'l, Inc. v. Pirrone*, 22 B.R. 166, 193-94 (Bankr. S.D.N.Y. 1982) (mortgagees of a bankrupt debtor who had previously sought relief from the automatic stay in

order to commence foreclosure, and who had asserted in that earlier proceeding that the mortgaged real estate was worth a lower value, were estopped from asserting a higher value in a later proceeding to recover the value of the property).

In cases such as this where a party's change in position is particularly stark and calculated, it may not be necessary for the plaintiff to have prevailed at all on its earlier position. *Allen*, 667 F.2d at 1166-67 (estoppel "not necessarily confined to situations where the party asserting the earlier contrary position there prevailed," although "obviously more appropriate"); *Hall v. GE Plastic Pacific PTE Ltd.*, 327 F.3d 391, 398-99 (5th Cir. 2003) ("The judicial acceptance requirement does not mean that the party against whom the judicial estoppel doctrine is to be invoked must have prevailed on the merits. Our cases suggest that doctrine may be applied whenever a party makes an argument with the explicit intent to induce the district court's reliance.") (internal quotation marks and citations omitted).

Having successfully avoided dismissal of its complaint against Citigroup by arguing that Section 16 of the Lease did not provide for a claim against the Port Authority for the collapse of the substation, plaintiffs should not now be permitted to commence a new action asserting that precise position. Plaintiff's Fifth Complaint should be dismissed.

## POINT IV

### THE COMPLAINT FAILS TO STATE A CAUSE OF ACTION BECAUSE IT IS PLEADED IN GENERAL TERMS.

While a complaint need not detail the evidentiary bases of its claims, it is required to include a "short and plain statement of the claim showing that the pleader is entitled to relief." F.R.C.P. 8. Although the rules governing "notice" pleading are very flexible, the complaint is still required to inform the defendant of the basis for the claim against it and what plaintiff

claims defendant has done to justify liability. *See* 5 Alan Wright & Arthur Miller, *Federal Practice and Procedure* § 1215 (2007). Dismissing the complaint is appropriate, however, where allegations against defendant are "too general." *McKinnon v. Patterson*, 568 F.2d 930, 934 (2d Cir. 1977) (dismissing Section 1983 claims on grounds that allegations were too general to withstand a motion to dismiss). "[W]here the complaint is 'too general,' it will not provide the defendant fair notice regarding the nature of plaintiff's claim and the grounds upon which it rests." *Gillespie v. Ancona*, 1999 WL 66538 *2 (D.Conn. 1999) (dismissing 1983 claims) (citing *Boston & Maine Corp. v. Town of Hampton,* 987 F.2d 855, 865 (1st Cir.1993)).

Plaintiffs' Fifth Complaint does not meet the Rule 8 liberal pleading requirement. Despite the fact that discovery has been ongoing for almost five years, over 800,000 pages have been produced and almost two-dozen depositions have been taken relating specifically to World Trade Center 7 and the related contracts and agreements, *see* Jacob Dec. ¶ 17, the complaint does not give any indication of what "act and omission" by the Port Authority – negligent or not – led to the destruction of the substation and thus to the contract claims. The complaint is specific with respect to the contractual provisions under which the Port Authority is allegedly required to pay for Con Ed's damages, but completely vague with respect to the conduct by the Port Authority or others which would bring those contract provisions into force.

The complaint pleads that the Port Authority must pay to Con Ed almost $130 million because it "caused the destruction of the Building and Substation" by "act and omission" and negligence. Jacob Dec. ¶ 2, Ex. A, ¶¶ 37, 47, 48. However, the complaint merely sets forth a laundry list of possibilities as to what the "act and omission" or negligence might be, leaving defendant with no information about what plaintiffs are claiming it did or did not do. The "act and omission" that is the basis for liability is stated as being "in the design, approval, inspection,

installation, alteration, maintenance, operation, conduct and control of the Building and its load

bearing structural systems, structural modifications, diesel-fueled power generation systems and

appurtenant fuel oil and distribution systems, and fire protection systems." Not only is this

merely a list of almost everything having to do with the construction and operation of the

building, but also it fails to say what was the fault or flaw in the design, approval, etc. that

caused the destruction of the substation.

The negligence forming the basis of the second cause of action is alleged in the same

vague and general fashion. After stating that the Port Authority was negligent by act and

omission in exactly the same words as in the first cause of action (compare Jacob Dec. ¶ 2, Ex.

A, ¶¶ 37 and 47), the complaint describes that negligence as including almost all conduct with

respect to the construction and operation of the building without identifying the negligent act or

acts, nor how they caused the destruction of the building and the substation. The negligence is

described as "in failing to properly supervise the conduct, activities and operations of its

employees, in failing to provide and observe adequate safety rules and regulations, in failing to

comply with applicable statutes, rules, regulations, ordinances and standards of good practice, in

allowing unsafe conditions to exist, and in the design, approval, inspection, installation,

alteration, maintenance, operation, conduct and control of: the load bearing structural systems;

structural modifications; diesel-fueled power generation systems and appurtenant fuel oil and

distribution systems, and; [sic] fire protection systems within the Building." *Id.* at ¶ 48. But the

complaint is silent with respect to what safety rules and regulations were not observed, what

unsafe conditions existed, what employee conduct was unsupervised, and not only what

structural or fuel systems are at issue but also what was improper about their design, what was

wrong with their inspection, what was the matter with their installation, and so forth. At most,

defendant can glean that something to do with the diesel-fueled power generator systems may be relevant, among many other unspecified allegations. Five years into the litigation, plaintiffs should be able to do better.

## CONCLUSION

The Port Authority respectfully requests that this Court dismiss the Complaint filed by plaintiffs on November 26, 2007, together with such other and further relief as to this Court seems just and proper.

Dated: New York, New York
      February 11, 2008

                Respectfully submitted,

                SCHIFF HARDIN LLP

                By: _____
                   Beth D. Jacob (BJ6415)
                   Donald A. Klein (DK7821)
                   Jeanne Cho (JC4631)
                   900 Third Avenue
                   New York, N.Y. 10022
                   212-753-5000

                *Attorneys for Defendant The Port Authority of New York and New Jersey*

Of Counsel:
  Eleonor Ignacio*

* Admitted in California, not admitted to this Court.

NY\50246855.11