UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

IN RE SEPTEMBER 11 PROPERTY DAMAGE
AND BUSINESS LOSS LITIGATION

21 MC 101 (AKH)

---

CONSOLIDATED EDISON COMPANY OF NEW
YORK, INC., et al.,

07 CV 10582 (AKH)

                              Plaintiffs,

        -against-

THE PORT AUTHORITY OF NEW YORK AND
NEW JERSEY,

                              Defendant.

---

## MEMORANDUM OF LAW IN OPPOSITION
## TO MOTION TO DISMISS COMPLAINT

---

Gennet, Kallmann, Antin & Robinson, P.C.
Attorneys for Plaintiffs
45 Broadway Atrium
Litman Suite
New York, New York 10006
(212) 406-1919

Mark L. Antin (MA0427)

Greenbaum, Rowe, Smith & Davis, LLP
Attorneys for Plaintiffs
Metro Corporate Campus One
P. O. Box 5600
Woodbridge, New Jersey 07095-0988
(732) 549-5600

Franklin M. Sachs (FS6036)
Jane J. Felton (JF7345)
Malvina Nathanson (MN8497)
 (Of Counsel)

# TABLE OF CONTENTS

INTRODUCTION ................................................................................................... 1

STATEMENT OF FACTS ....................................................................................... 2

ARGUMENT .......................................................................................................... 12

POINT I .........................................................................................................12
CON EDISON'S CAUSE OF ACTION FOR BREACH OF CONTRACT AROSE
WHEN ITS DEMAND FOR INDEMNIFICATION AND FOR PAYMENT OF
THE INSURANCE PROCEEDS WAS REJECTED. ........................................... 12

POINT II.........................................................................................................20
THE NOVEMBER 2007 COMPLAINT DOES NOT VIOLATE THE RULE
AGAINST CLAIM-SPLITTING. ...................................................................... 20

A.   The Rule Against Claim-Splitting Does Not Bar a Complaint Asserting New
     Claims that Arose After a Prior Pleading was Filed....................................... 20

B.   The Rule Against Claim-Splitting Does Not Bar Con Edison's Complaint
     Because the Port Authority's Obligations Under §§ 16, 17 and 18 Had Not
     Arisen at the Time the Original Complaint was Filed...................................... 21

C.   The Rule Against Claim-Splitting Does Not Preclude the Filing of the
     Contractual Reimbursement Claims Simply Because They are Related to the
     Events of September 11, 2001....................................................................... 22

D.   Public Policy and the Equities in this Case Favor Con Edison and its Right to
     Sue Port Authority for its Breach of Contractual Obligations. ....................... 23

POINT III.........................................................................................................24
CON EDISON DID NOT TAKE A PRIOR INCONSISTENT POSITION THAT
WAS RELIED ON BY THE COURT................................................................. 24

POINT IV .........................................................................................................30
THE COMPLAINT IS SUFFICIENTLY SPECIFIC TO MEET THE
REQUIREMENTS OF NOTICE PLEADING..................................................... 30

# TABLE OF AUTHORITIES

*Cases*

815 Park Avenue Owners v. Fireman's Insurance Company,
   225 A.D.2d 350, 639 N.Y.S.2d 325 (1st Dept. 1996)................................................. 13

Bhaduri v. Summit Security Services,
   2006 WL 2290766 (S.D.N.Y., dec. 8/8/06) ............................................................... 31

Boston & Maine Corp. v. Town of Hampton,
   987 F.2d 855 (1st Cir. 1993)...................................................................................... 32

Chaveriat v. Williams Pipe Line Co.,
   11 F.3d 1420 (7th Cir. 1993) ..................................................................................... 29

City of New York v. State of New York,
   40 N.Y.2d 659, 389 N.Y.S.2d 332 (1976)................................................... 12, 17, 18

Cleveland v. Policy Management Sys. Corp.,
   526 U.S. 795 (1999).................................................................................................. 28

Costello v. Allstate Insurance Company,
   230 A.D.2d 763, 646 N.Y.S.2d 695 (2d Dept. 1996) ............................................... 13

Curtis v. Citibank, N.A.,
   226 F.3d 133 (2d Cir. 2000) ............................................................................... passim

Educadores Puertorriquenos en Accion v. Hernandez,
   367 F.3d 61 (1st Cir. 2004)....................................................................................... 32

Gillespie v. Ancona,
   1999 WL 66538 (D. Conn. 1999).............................................................................. 32

Helmer-Cronin Construction v. Beacon Community Development,
   156 A.D.2d 543, 549 N.Y.S.2d 50 (2d Dept. 1989) ........................................... 12, 16

In re Worldcom, Inc. Securities Litigation,
   308 F.Supp.2d 246 (S.D.N.Y. 2004) ........................................................................ 28

Kassner v. City of New York,
   46 N.Y.2d 544, 415 N.Y.S.2d 785 (1979)......................................................... 12, 16

Konstaninidis v. Chen,
   626 F.2d 922 (D.C. Cir. 1980)................................................................................... 29

Legnani v. Alitalia Linee Aeree Italiane, S.P.A.,
   400 F.3d 139 (2d Cir. 2005) ......................................................................... 20, 21, 22

Mainline Electric Corp. v. East Quogue Union Free School District,
    46 A.D.3d 859, 849 N.Y.S.2d 92 (2d Dept. 2007) ....................................................... 12, 16, 19

Matter of Continental Insurance Company v. Richt,
    253 A.D.2d 818, 677 N.Y.S.2d 634 (2d Dept. 1998) ................................................................ 15

McDermott v. City of New York,
    50 N.Y.2d 211, 428 N.Y.S.2d 643, rearg. denied 50 N.Y.2d 1059, 431 N.Y.S.2d 1031
    (1980) ........................................................................................................................ 14, 21, 22

Mitchell v. Washingtonville Central School District,
    190 F.3d 1 (2d Cir. 1999) .............................................................................................. 28, 29

New Hampshire v. State of Maine,
    532 U.S. 742 (2001) ................................................................................................... 24, 25, 27

Office of Irwin G. Cantor v. Swanke Hayden Connell & Partners,
    186 A.D.2d 71, 588 N.Y.S.2d 19 (1st Dept. 1992).................................................................. 21

Parker v. Columbia Pictures,
    204 F.3d 326 (2d Cir. 2000) .................................................................................................. 28

Reynolds v. Commissioner of Internal Revenue,
    861 F.2d 469 (6th Cir. 1988) ................................................................................................. 27

Ryan Operations v.Santiam-Midwest Lumber,
    81 F.3d 355 (3d Cir. 1996) .............................................................................................. 27, 29

Sprague v. Marshall,
    15 A.D.3d 853, 789 N.Y.S.2d 570 (4th Dept. 2005) ............................................................... 21

State of New York v. Stewart's Ice Cream Company,
    64 N.Y.2d 83, 484 N.Y.S.2d 810 (1984) .......................................................................... 13, 14

Swierkiewicz v. Sorema, N.A.,
    534 U.S. 506 (2002)............................................................................................................... 31

Total Petroleum, Inc. v. Davis,
    822 F.2d 734 (8th Cir. 1987) ................................................................................................. 29

Verizon New York v. Sprint PCS,
    43 A.D.3d 686, 841 N.Y.S.2d 529 (1st Dept. 2007)...................................................... 12, 16, 18

Waldman v. Village of Kiryas Joel,
    207 F.3d 105 (2d Cir. 2000) .................................................................................................. 20

Wight v. Bankamerica Corporation,
    219 F.3d 79 (2d Cir. 2000) .................................................................................................... 28

*Statutes*

McKinney's Unconsolidated Laws § 7107 .................................................................................. 11

*Other Authorities*

Black's Law Dictionary (7th Ed) ............................................................................................. 14

*Rules*

Fed. R. Civ. P. 15(c) ............................................................................................................... 20

Fed. R. Civ. P. 15(d) ............................................................................................................... 20

Fed. R. Civ. P. 8 ................................................................................................................. 30, 31

Fed. R. Civ. P. 8(f) .................................................................................................................. 32

## INTRODUCTION

The issues raised by Port Authority's motion to dismiss Con Edison's November 2007 complaint come to this Court after a somewhat muddled procedural history marked by misunderstandings by counsel and the court.[1] However, an undeniable truth remains. As is evident from an examination of the lease between Con Edison and the Port Authority (see discussion below), Port Authority has a contractual obligation, without regard to its negligence, to reimburse Con Edison for its expenses (1) in rebuilding the substation building on top of which 7 World Trade Center was built, (2) in replacing its related equipment, and (3) in removing debris, if the damages necessitating those expenses were the result of an act or omission by Port Authority or its agents. Port Authority has a separate contractual obligation to turn over to Con Edison the insurance proceeds from the insurance it agreed to obtain (and for which Con Edison paid) for the substation building and, if these proceeds are inadequate, to reimburse Con Edison as a self-insurer to the full extent of Con Edison's damages. The parties have litigated the clauses containing these provisions since the inception of the case.

The main question before this Court is whether Con Edison has asserted its contract claims in a sufficiently timely and specific manner to meet the requirements for a claim against the Port Authority. In this memorandum, Con Edison argues that it has. The motion to dismiss also raises questions of judicial estoppel and claim-splitting, neither of which requires dismissal. In a separate motion and supporting memorandum, Con Edison asks this Court to accept an Amended and Supplemental Complaint should this Court grant the motion to dismiss.

---

[1] Plaintiffs Con Edison and its subrogating insurers will be referred to as "Con Edison."

## STATEMENT OF FACTS[2]

On May 29, 1968, Consolidated Edison Company of New York, Inc. ("Con Edison")
entered into a lease with The Port Authority of New York and New Jersey ("Port Authority")
under which Con Edison was obligated to "furnish and supply the electricity requirements" of
the not-yet-built World Trade Center complex through a substation that would be installed "in
the building to be constructed by the Port Authority" (Lease "Whereas" clauses: D Ex P at 1).
Con Edison was to be the lessee of land shown in an attached exhibit and a substation building to
be constructed on that land by Port Authority (the land and substation building denominated the
"premises") (Lease, § 1: D Ex P at 2) and would reimburse Port Authority for $3,350,000 of the
costs of constructing the substation building (Lease, § 7: D Ex P at 5).  Port Authority also
agreed to install certain equipment provided by Con Edison, and Con Edison would install
certain other equipment (Lease, § 4[d]: D Ex P at 3).

The lease anticipated the construction by Port Authority of additional "stories, structures,
buildings or improvements" "wholly or partially on, above, or about the Substation" and granted
Port Authority the right to use the roof surface and side wall surfaces of the substation in
connection with that construction.  Port Authority was also entitled to "temporarily use portions
of the substation building" and enter "upon, over, under or through" Con Edison's premises in
connection with that construction.  (Lease, § 8[a]: D Ex P at 7). Port Authority's exercise of
those rights "shall not be or be construed to be an eviction of [Con Edison] nor be made the
grounds of any abatement of rent nor any claim or demand for damages, consequential or
otherwise" (Lease, § 8[b]: D Ex P at 7).

---

[2] The facts are based on the exhibits (designated as "D Ex") to the declaration of Beth Jacob in
support of the motion, except as otherwise stated.

The lease obligated Con Edison to assume complete responsibility for "all care, repair, replacement and rebuilding whatsoever in the substation or land" (Lease, § 15: D Ex P at 15). However, Con Edison's obligations did not extend "to causes or conditions arising out of the use or occupancy of the premises or of the space above and about the premises by the Port Authority, its employees, agents or contractors" (Lease, § 16: D Ex P at 16). Port Authority agreed to indemnify Con Edison "for any expense" Con Edison incurred in "maintaining, repairing, replacing or rebuilding" the substation or its equipment where the expenses were the result of damages caused by "the acts or omissions of the Port Authority or its agents, contractors or employees in connection with the construction or maintenance of the stories, structures, buildings or improvements" described in § 8, the provision that authorized the Port Authority to construct additional "stories, structures, buildings or improvements" "wholly or partially on, above, or about the Substation" (Lease, § 16: D Ex P at 17; Lease, § 8: D Ex P at 7).

The Port Authority's obligations in § 16 were independent of and in addition to the Port Authority's liability in negligence to Con Edison under § 40 (Lease, § 40: D Ex P at 34).

Section 17 of the Lease required Port Authority to insure 100% of the replacement value of the substation building in a standard fire insurance policy that would provide that "the loss, if any, would be adjusted with and payable to the Port Authority" (Lease § 17 (a): D Ex P at 17). If there were major damage to or destruction of premises, Con Edison was required to "make and perform the necessary repairs, rebuilding or replacements and to restore such premises," although Con Edison also had the option to choose not to rebuild the substation (Lease § 18(c): D Ex P at 19). Con Edison was also required to remove all debris resulting from any damage from fire, the elements, public enemy or other casualty" (Lease, § 18(a): D Ex P at 19). The insurance proceeds from the insurance obtained pursuant to § 17 would be made available to Con

Edison for rebuilding the substation and removal of debris (Lease, §§ 17(a), 18(c): D Ex P at 17, 19). Con Edison was to reimburse Port Authority for the insurance premiums (Lease, § 17(c): D Ex P at 17).

As is known from related litigation between the parties, in 1980, Port Authority agreed with 7 World Trade Company for the latter to construct 7 World Trade Center ("7 WTC") above Con Edison's substation. The building collapsed during the aftermath of the September 11, 2001, terrorist attacks on 1 and 2 World Trade Center, and Con Edison's substation and its equipment were destroyed as a result of the collapse of the office tower. Con Edison previously sued Port Authority and others based on claims that their negligence caused the collapse of 7 WTC; it now seeks to sue Port Authority for its failure to honor its contractual obligations to indemnify Con Edison for damages caused by its acts or omissions (or those of its agents, contractors or employees) in connection with the "construction or maintenance" of 7 WTC, regardless of its negligence, pursuant to § 16 of the lease; and for the payment of insurance proceeds and debris removal costs pursuant to §§ 17 and 18 of the lease.

A notice of claim was filed in April 2002 against Port Authority on behalf of Con Edison's insurance company-subrogees. On June 11, 2002, a notice of claim adding Con Edison as a claimant but otherwise identical in language was filed against Port Authority. The claim identified the nature of the claim as "property damage as a result of the negligence and carelessness of the Port Authority of New York and New Jersey..." (D Ex C, ¶ 2). On September 10, 2002, Con Edison and its insurance company-subrogees filed a complaint against Port Authority (D Ex B). The suit alleged common law negligence and per se negligence by Port Authority (D Ex B, ¶¶ 28-29, 33-35) and demanded judgment for Con Edison's losses, including the damage to its substation and equipment and the costs to re-establish and maintain services to

lower Manhattan (D Ex B, ¶¶ 26, 30-41 and wherefore clause). Included in the common law negligence cause of action was a reference to "breach of contract" ("The ... damage to the Con Ed substation ... were caused by the negligence, carelessness, recklessness and breach of contract of The Port Authority..." [D Ex B, ¶ 28] and "Defendant's negligence, carelessness, recklessness and/or breach of the lease was the proximate cause of ... plaintiffs' damage" [D Ex B, ¶ 29]) but did not refer to any specific provision of the lease.[3]

Port Authority filed an answer to the complaint in December 2004. In ¶ 46, as an affirmative defense, Port Authority asserted, "Plaintiffs' claims are barred by the provisions of the Lease Agreement between The Port Authority and Con Edison dated May 29, 1968" (Plaintiffs' Exhibit ["P Ex"] 1, ¶ 46). It did not specify the lease provision.

In a related case (04 CV 7272), Con Edison sued Citigroup, a tenant in 7 WTC,[4] and others, claiming that their negligence had been responsible for the destruction of Con Edison's substation. On January 12, 2006, this Court ruled on, among other things, Citigroup's motion to dismiss the complaint.[5] 468 F.Supp.2d 508 (S.D.N.Y. 2006). One of the bases for Citigroup's motion was that "the Con Ed lease prohibits the plaintiffs from asserting negligence claims against Citigroup." 468 F.Supp.2d at 513. Its argument was that it is a third-party beneficiary of

---

[3] An amended complaint filed in 2003 (D Ex D) added the City of New York as a defendant and allegations concerning the City's construction of a fuel system for its command bunker at 7 WTC but was otherwise identical with the complaint filed in 2002. Both complaints will be referred to as "the complaint" or "the original complaint" as the context requires.

[4] The tenant was originally Salomon Brothers, which became Salomon Smith Barney, which was acquired by Citigroup Global Holdings Corp., here referred to as "Citigroup."

[5] After the original complaint was filed in September 2002, discovery was delayed by the filing of numerous 12(b)(6) motions in connection with that complaint and in related litigation. Thus, discovery in this complex case is, understandably, still in its early stages.

the Con Edison/Port Authority lease and that Con Edison was relegated to seeking relief against

Port Authority under the remedies provided in the lease. 468 F.Supp.2d at 525-26.[6]/[7]

In discussing this contention, this Court noted that "Plaintiff's Complaint, alleging

negligence by Citigroup ... is not based on specific aspects of the Con Edison Lease," but that

Citigroup based its arguments "on specific covenants of that Lease". 468 F.Supp.2d at 526.

Although this Court thought Citigroup might be a third-party beneficiary of "[t]he freedom of

design and construction obtain[ed] by the Port Authority ... to construct a tower of 'whatsoever

design, size and purpose as the Port Authority may from time to time and at any time during the

letting determine'," because Citigroup had not yet filed its answer and there had not yet been

discovery, the motion to dismiss on this basis was denied. 468 F.Supp.2d at 526-27.

---

[6] At the outset of the opinion, this Court recognized that the lease between Con Edison and Port Authority "provided that the Port Authority would indemnify Con Ed for damage to its property resulting from the construction and maintenance of [7 WTC]". 468 F.Supp.2d at 511.

[7] In opposition to this aspect of Citigroup's motion to dismiss, Con Edison argued against any suggestions that the lease provisions concerning Port Authority's obligation to "reimburse" meant that claims based on the collapse of 7 WTC other than those against Port Authority were barred or that Con Edison was limited in its ability to make claims (D Ex F at 11). First, Con Edison said, the lease provisions dealt with "construction or maintenance" of structures above the substation and since construction of the fuel distribution apparatus had been completed in 1990, the 2001 collapse was not in connection with construction or maintenance of 7 WTC (D Ex F at 11-12). Second, the provisions involving Port Authority's obligation to "reimburse" did not concern "anticipated tenant improvement in a future structure" but only concerned the "'entry, use and construction by the Port Authority' ... on the Substation" (D Ex F at 12) (language contained in § 8[a] of the lease). Finally, the provisions concerned acts or omissions of Port Authority "'in connection with the construction or maintenance' of the future structure" (language contained in § 16 of the lease) and "not any premises defect case which might arise 20 years later" (D Ex F at 12). The memorandum went on: "While the contract is silent as to the matter of remedies Con Ed might apply to obtain this reimbursement, lawsuit for breach of contract against the PA and its employees, or in negligence against it[s] agents or contractors, is certainly not excluded. The provision excludes, only as to a breach of contract action against the PA, claims of 'eviction of the Lessee' and for 'abatement or rental [or other] damages, consequential or otherwise'" (D Ex F at 12).

This Court also ruled on Port Authority's motion to dismiss based, in part, on its argument that the lease between Con Edison and Port Authority, by naming Port Authority as insured, barred the insurance companies' claims for reimbursement. 468 F.Supp.2d at 520. This Court described §§ 8(b) and 16 as lease provisions that "limited the remedies available to Con Ed." 468 F.Supp.2d at 520. After quoting the sentence of § 8(b) that "the exercise of [Port Authority's rights to construct a building, etc., above the substation ... shall not ... be made the grounds of any abatement of rent nor any claim for damages, consequential or otherwise", he interpreted § 16 as providing that "the measure of the Port Authority's liability would be to reimburse Con Edison for its repair and replacement expenses". 468 F.Supp.2d at 521. In short, "at the time that Con Ed agreed to build the Substation, it agreed that the Port Authority had the right to build a commercial tower over its substation and that any damage resulting from the Port Authority's exercise of its rights could not give rise to a suit for damages, but only for reimbursement of expenses incurred in 'maintaining, replacing, or rebuilding the Substation'". 468 F.Supp.2d at 521 (quoting from § 16). He then went on to discuss the implications of the provision requiring Port Authority to secure a fire insurance policy at Con Edison's expense (§ 17 of the lease).

Noting that Port Authority had ignored those lease provisions "obligating it to reimburse Con Ed for damages incurred as a result of the construction of the 7 WTC commercial tower," this Court determined that the motion to dismiss based on the insurance provision should not be decided in advance of the filing of an answer by Port Authority and further discovery. 468 F.Supp.2d at 521.

On February 16, 2006, during a conference with attorneys for Con Edison, Port Authority and parties to related litigation (including Citigroup), this Court suggested that a possible

interpretation of the lease was that Con Edison had given up its right to sue Port Authority for damages but got in exchange a promise of reimbursement in the "indemnity" clause under § 16 of the lease  (P Ex 2 at 3). The Court asked Con Edison's attorney for his interpretation of the lease provisions.  After qualifying his response by noting that he was unprepared for that question, which was not on the agenda for the status conference,[8] counsel opined that § 16 "talks about Con Ed, what happens during the actual construction of that tower, not with respect to the results of defects in construction. If you'll look at it, the clause talks about ... no rent abatement ... things of that same nature ... with respect to anything that occurred during the construction of that tower"  (P. Ex. 2 at 6).  The reference to "rent abatement" makes clear that counsel was talking about § 8, not § 16, since the rent abatement language appears only in § 8(b).

Counsel for Port Authority thought that "we can't on the current record determine exactly what is meant by these clauses" and suggested that discovery should begin with the lease, "because if there is something here that defines the relationship between Con Ed and The Port Authority defendant, we might as well get it resolved"  (P. Ex. 2 at 8-9).

On May 18, 2007, Con Edison sent Port Authority a letter demanding the payments required under §§ 16, 17 and 18 of the lease.  The letter described Port Authority's obligation to indemnify Con Edison, quoting from § 16 of the lease, and specified the indemnification obligation "arising from the PA's 'acts or omissions ... in connection with the construction or maintenance of 7 WTC,[ '] regardless of fault on the part of PA" (D Ex O, May 18, 2007, letter at 2-3).  It then referred to Port Authority's obligation to pay for the cost of rebuilding the substation, a demand made on Port Authority's Assistant Treasurer, and the Assistant Treasurer's

---

[8] The parties had prepared and submitted a joint agenda for this status conference. As the Court indicated in its opening remarks, it had added a new first item to the agenda: a discussion of his thoughts regarding the "indemnity provision" of the lease (§ 16) and the section that "contemplated the construction of a commercial tower above the substation" (§ 8). (P Ex 2 at 3).

request for patience while Port Authority adjusted its claim under the insurance policies (obligations arising under §§ 17 and 18) (D Ex O, May 18, 2007, letter at 3). The letter distinguished between Port Authority's "indemnity obligation for the Substation building and equipment" and Port Authority's "insurance arrangements" (D Ex O, May 18, 2007, letter at 4). Con Edison insisted that Port Authority make good its obligations without waiting for its own insurance issues to be resolved, particularly since Con Edison had fulfilled its obligation to make payments to Port Authority so it could obtain appropriate insurance (D Ex O, May 18, 2007, letter at 4).[9] Finally, Con Edison laid out the total expenses incurred, including expenses for the equipment it lost, and demanded "forthwith" payment to it and to its subrogating insurers (D Ex O, May 18, 2007, letter at 4-6). No response to the demand was ever received.

In August 2007, plaintiffs sought to supplement the complaint by adding a cause of action for breach of contract based on new facts, a cause of action, which, it was asserted, "accrued after the filing of the Amended Complaint" (D Ex L, Notice of Motion at 1). Counsel's declaration in support described the supplemental complaint as making a "claim for negligence in the design, construction and modification of 7 World Trade Center..." (P Ex 3 at 1) The motion was accompanied by a copy of the lease between Con Edison and Port Authority and the letter sent by plaintiff's counsel on May 18, 2007, demanding payment of the money due under the lease.

Also submitted in support of the motion was the affidavit of Joseph M. Lynch, Insurance Department Manager for Con Edison. Mr. Lynch described how he had made a claim pursuant to Port Authority's insurance obligations under the lease (that is, payments from the insurance

---

[9] The obligation to obtain insurance applied only to the substation building and the expenses of debris removal but not to the substation's equipment (Lease, § 17: D Ex P at 17; see discussion at hearing on motion to file supplemental complaint: D Ex N at 13-18).

the Port Authority agreed to procure for Con Edison's benefit that covered damage to the substation building and the expenses of debris removal), had received a check in partial payment in June 2004, and had continued negotiations with the assistant treasurer and others from Port Authority concerning further payments, which negotiations were fruitless (D Ex L at 1-2).

The proposed supplemental complaint, dated August 14, 2007, asserted a claim for breach of contract, specifically referring to (a) § 16 of the lease, which "obligates the Port Authority to indemnify Con Edison for damage arising from the Port Authority's acts or omissions in connection with the construction or maintenance of 7 WTC, regardless of fault on the part of the Port Authority" (P Ex 4, ¶ 2 and (b) § 18 of the lease), which "obligates the Port Authority to indemnify Con Edison, to the extent of available insurance, for debris removal expenses arising from the Port Authority's acts or omissions in connection with the construction or maintenance of 7 WTC, regardless of fault on the part of the Port Authority" (P Ex 4, ¶ 7). The proposed complaint asserted that Port Authority had acknowledged its obligations under those provisions by making a partial payment (P Ex 4, ¶ 8) and that "due demand" had been made for what was owing (P Ex 4, ¶ 11).[10]

A hearing on the motion to supplement was held September 20, 2007.  Con Edison's counsel explained that the supplemental complaint was based on a breach of the lease that occurred June 7, 2007, following the demand by Con Edison for a payment due under the lease (D Ex N at 4-5).  However, the proposed supplemental complaint did not allege the filing of the requisite, pre-pleading notice of claim required by McKinney's Unconsolidated Laws, §§ 7107,

_____

[10] At about the same time, Con Edison filed another complaint (07 CV 7969) that asserted two causes of action for breach of contract (D Ex M).  During a court appearance on the motion to supplement, counsel explained that this complaint had been filed "in an abundance of caution" and would be withdrawn once a "supplemental or new complaint" was filed (D Ex N at 10).  The complaint was later withdrawn.

7108 (D Ex N at 5-6). Counsel attempted to "serve" the notice of claim on the spot so he could file the supplemental complaint 60 days later[11] and also asked for permission to submit a new supplemental complaint that would refer to the notice of claim. Judge Hellerstein's response was definitive: "You can do anything you want" but "I am going to deny the motion. You can do what you want to make it kosher, if you can." (D Ex N at 6).

Although he had just denied the motion to file a supplemental complaint, this Court went on to discuss the merits of the request. He recalled earlier discussions concerning whether the complaint sounded in tort or contract, and their resolution: since § 40 of the lease obligated Port Authority to pay damages if it or its agents was negligent, the "concepts in tort and contract began to merge" (D Ex N at 7). Counsel noted that § 16 of the lease was independent of § 40 and was a strict liability provision (D Ex N at 7). The negligence causes of action arose September 11, 2001; the contract causes of action arose when Port Authority refused the demand for payment on June 7, 2007 (D Ex N at 9).

This Court reiterated his denial of the motion to file a supplemental complaint, feeling the contract claim should have been made earlier since it was "intertwined" with the negligence claims and not a "brand new cause of action" (D Ex N at 18-19, 21). Counsel commented that "it's our view that the breach of contract language ... in our original claim is enough but ... again, this [supplemental complaint] is an abundance of caution" (D Ex N at 20).

On or about September 21, 2007, Con Edison served an additional notice of claim on Port Authority, alleging that the claim was for breach of contract, and arose when "The Port Authority of New York and New Jersey refused or failed to make payments as required under the aforesaid lease upon due demand made May 18, 2007, the time for response to which was June

---

[11] Unconsolidated Laws § 7107 provides that the notice of claim be served "at least sixty days" before any suit is commenced.

7, 2007" (D Ex O, Notice of Claim, ¶ 3).  Attached as an exhibit to the notice of claim was the letter dated May 18, 2007, discussed above.  On November 26, 2007, the complaint that is the subject of the motion to dismiss was filed (D Ex A).

## ARGUMENT

### POINT I

**CON EDISON'S CAUSE OF ACTION FOR BREACH OF CONTRACT AROSE WHEN ITS DEMAND FOR INDEMNIFICATION AND FOR PAYMENT OF THE INSURANCE PROCEEDS WAS REJECTED.**

It is hornbook law that a cause of action for breach of contract accrues from "time of the breach."  Kassner v. City of New York, 46 N.Y.2d 544, 550, 415 N.Y.S.2d 785 (1979).  Here, the breach occurred when Port Authority constructively rejected Con Edison's May 18, 2007, demand that Port Authority honor its indemnification obligations under § 16 of the contract and that it pay Con Edison the insurance proceeds as required under §§ 17 and 18 of the contract.

In a contract involving the payment of money, the breach occurs when the demand for payment is expressly or constructively rejected.  Kassner, 46 N.Y.2d at 550; City of New York v. State of New York, 40 N.Y.2d 659, 668, 389 N.Y.S.2d 332 (1976); Mainline Electric Corp. v. East Quogue Union Free School District, 46 A.D.3d 859, 861, 849 N.Y.S.2d 92 (2d Dept. 2007); Verizon New York v. Sprint PCS, 43 A.D.3d 686, 687, 841 N.Y.S.2d 529 (1st Dept. 2007); Helmer-Cronin Construction v. Beacon Community Development, 156 A.D.2d 543, 544, 549 N.Y.S.2d 50 (2d Dept. 1989).

The court explained in Verizon that where the plaintiff has no reason to know that the defendants would refuse payment under a contract, its cause of action for breach of contract accrued, for purposes of the statute of limitations, one month after its letter demanding payment, the defendants having failed to pay.  Verizon New York, 43 A.D.2d at 687, 841 N.Y.S.2d 529.

In this case, Port Authority never responded to Con Edison's May 18 letter demanding payments under §§ 16, 17 and 18 of the lease. Since the May 18 letter demanded payment within 15 days, the very earliest that Con Edison could have deemed its demand rejected was June 2. That being the earliest date of the accrual of its cause of action, its service of a complaint on November 26 was within the one-year statutory statute of limitations and was therefore timely.

Port Authority argues that an indemnification claim accrues on the date of the property damage, "without the necessity for any demand by the plaintiff or rejection by the defendant," relying on cases that are not relevant because they involve the particular provisions of first-party insurance contracts (see memorandum of Port Authority in support of its motion to dismiss ["Port Authority Memo"] at 13-14). 815 Park Avenue Owners v. Fireman's Insurance Company, 225 A.D.2d 350, 639 N.Y.S.2d 325 (1st Dept. 1996), was a suit against an insurance company where the policy included a provision requiring that suit be commenced "within two years 'after the loss occurs.'" 225 A.D.2d at 351. The court found that "the loss" - property damage and the ancillary rent loss - occurred when the property was damaged. Costello v. Allstate Insurance Company, 230 A.D.2d 763, 646 N.Y.S.2d 695 (2d Dept. 1996), again involved an insurance policy with a specific provision requiring suit within a specified period from the "date of loss." The court held that the term has "consistently been held to refer to the date of the catastrophe insured against, and not to the accrual date of the plaintiff's claim against Allstate for failure to pay." 230 A.D.2d at 763. Thus, the court implicitly recognized the validity of the contract accrual analysis offered by Con Edison, but rejected the argument in light of a specific, contradictory contract provision.

The issue in State of New York v. Stewart's Ice Cream Company, 64 N.Y.2d 83, 484 N.Y.S.2d 810 (1984), was the length of the statute of limitations. The court recited the

"traditional view that an action for indemnity accrues when any 'loss is suffered' by the party seeking indemnity," but in applying that principle went on to hold that the accrual date in the case before it, the date of the "loss," was not when the "damage" occurred (the discharge of petroleum, resulting in the State spending money for its cleanup) but when the State expended the funds to clean it up (not unlike Con Edison demanding reimbursement for the money it spent rebuilding the substation). 64 N.Y.2d at 89.

Here, so far as the § 16 indemnification claim is concerned, Port Authority did not assume liability for property damage but agreed to reimburse Con Edison for expenses it incurred in repairing or rebuilding the substation and equipment. Section 16 required Port Authority to "reimburse" Con Edison for expenses "incurred" to maintain, repair, replace or rebuild its substation and substation equipment. According to Black's Law Dictionary (7th Ed), to "reimburse" means to "repay" or "indemnify" and to "indemnify" means to "reimburse for loss suffered...". Con Edison's claim is not based on an obligation to compensate for property damage but an obligation to reimburse, so its claim would not even arise until it had made the payments. McDermott v. City of New York, 50 N.Y.2d 211, 428 N.Y.S.2d 643, rearg. denied 50 N.Y.2d 1059, 431 N.Y.S.2d 1031 (1980).

In McDermott, a City employee injured by a malfunction of a sanitation truck sued the City, which in turn sued the manufacturer of the truck. In ruling on whether the third-party action was timely, the Court of Appeals held that the claim was essentially one of indemnification, and that the cause of action "is not complete until loss is suffered" so that "accrual occurs upon payment by the party seeking indemnity." 50 N.Y.2d at 217.

That payment is the crux of this contract cause of action is demonstrated by the fact that under the terms of the contract had Con Edison chosen not to rebuild the substation, it would

have had no expenses to reimburse and thus no cause of action. It was not the destruction of the substation that triggered Port Authority's liability, but Con Edison's rebuilding of the substation and incurring of those expenses.

Further, the expenses for which Port Authority would be liable under § 16 of the lease would necessarily be reduced by the insurance payments received pursuant to §§ 17 and 18 of the lease since there is an overlap. Section 16 applies to the substation building and equipment, §§ 17 and 18 apply to the substation building and expenses of debris removal. Only when the insurance payments for the substation are deducted can Con Edison's total expenses to be reimbursed under § 16 be determined. See, Matter of Continental Insurance Company v. Richt, 253 A.D.2d 818, 677 N.Y.S.2d 634 (2d Dept. 1998). In Continental Insurance, the question was when the statute of limitations for a cause of action under an underinsurance clause accrued. The court held that it did not accrue until after payment of the policy limits of the underinsured automobile was made pursuant to the judgment obtained against the tortfeasor. 253 A.D.2d at 819-20. Only then was the obligation of the underinsurer fixed.

So far as the §§ 17 and 18 claims are concerned, Port Authority's obligation to pay over the appropriate insurance proceeds to Con Edison does not arise until, under the terms of the contract, Port Authority has received all the payments due it from the insurance on the substation building, something which had not yet occurred as late as May 2007. See Ex L at 3; Ex O p. 9.

Thus, under the specific contract provisions defining Port Authority's obligations, the contract causes of action cannot be held to have accrued on the date of the destruction of the substation building. Rather, based as they were on Con Edison's payment of costs that Port Authority contracted to reimburse, either because of the indemnity clause or the insurance clauses, they accrued under traditional contract law upon the rejection of the demand for

payment. See, Kassner, 46 N.Y.2d at 550; Mainline Electric Corp., 46 A.D.3d at 861; Verizon New York, 43 A.D.3d at 687; Helmer-Cronin Construction, 156 A.D.2d at 544.

Port Authority claims that Con Edison made demands for payment "since at least February 2006" (Port Authority Memo at 14, relying on the May 18, 2007, letter). This is not correct. The May 18 letter referred to earlier negotiations for payments required by §§ 17 and 18. This process was lagging and in its letter of February 24, 2006, Port Authority admitted its claim against its insurer was "not yet complete" so Con Edison would have to wait (D Ex O, May 18 letter at 3). As the cases below show, the period of time during which payment negotiations are underway is deemed an excusable delay in making a demand. Therefore, it was reasonable for Con Edison to continue its discussions with Port Authority prior to sending its May 18, 2007 demand letter.

Counsel have found no cases placing any restrictions on the timing of a demand for payment, and opposing counsel have cited none. But Con Edison need not rely on any contention that it could wait an indefinite time to demand payment and thereby "toll" the statute of limitations unreasonably. The facts show that Con Edison did not wait an unreasonable period of time to make its demand under § 16 of the lease.[12]

- Con Edison had to wait until it had made all the payments for the expenses in rebuilding the substation and replacing the equipment. See McDermott, supra.

- The new substation was not opened until about June 2004. (See Sachs Decl. ¶ 10).

- Disputes with contractors and suppliers regarding charges for replacement of the substation and equipment are still not finally resolved. (See Sachs Decl. ¶ 11).

---

[12] Con Edison's claim for breach of the contractual provision of §§ 17 and 19 of the lease had still not accrued for notice of claim and Statute of Limitation purposes as of September 26, 2007, the date of the notice of claim. Thus, any argument that might be raised by Port Authority concerning the timing of the demand could only apply to the breach of contract claim under § 16.

- Until Con Edison knew how much it would be reimbursed for substation replacement costs from insurance proceeds under § 18, it would not know the extent of its reimbursement claims under § 16.

- To date, Con Edison has only received a partial payment of $20,000,000 from insurance proceeds under § 18 of the lease.  (See Affidavit of Joseph Lynch, ¶ 2: D Ex L).

- Since then Con Edison and Port Authority have engaged in ongoing negotiations with respect to the remainder of the payments due under § 18.   (See Affidavit of Joseph Lynch, p. 2: D Ex L).

- Port Authority acknowledged on September 20, 2007, that since its advance payment of $20,000,000, it had been engaging in discussions with its carrier and "certainly anything that we get we will pay over to them." (D Ex N, p. 17)

- The total sum in dispute concerning the insurance reimbursement for the rebuilding of the substation is more than $10,000,000, so the outcome of these negotiations will be a significant determinant of Port Authority's contractual obligations to Con Edison under § 16. (Sachs Decl. ¶ 11).

Certainly Con Edison could not have been expected to make its demand for payment under § 16 until it knew what payments were owing to it.  Its demand in May 2007 may even have been somewhat premature; it certainly could not be considered too late.

City of New York v. State of New York, 40 N.Y.2d 659 (1976), is instructive.  At issue was a highway program under which the City of New York was entitled to reimbursement from the State for its expenditures in condemnation proceedings.  After condemnation proceedings, the City paid for certain parcels and also interest from the time title to the property vested in the City to the time the payment was made.  Under the statute, before the City could obtain reimbursement, the State Comptroller had to conduct an audit.

When the City first demanded payment, the State asserted its position that it was only required to reimburse for one-year's worth of interest payments and a flurry of memoranda and conversations ensued.  The City then filed a series of vouchers, some of which were for the condemnation payments and one-year's interest, the others for the over-one-year's interest.  The

State paid the former but ignored the latter. On November 14, 1966, the City notified the State Comptroller that it would deem the ignored claims rejected if not audited within 60 days of the date of the letter. On March 9, 1967, within six months of the 60 days, the lawsuit was filed.[13]

One of the issues in the case was the time period that elapsed before the City sent its demand letter and "whether the city was justified in waiting until November of 1966 to send such a letter." The Court of Appeals said it could not "as a matter of law" say that the City waited too long in view of "the facts surrounding its negotiations with the State. The claims had then never been categorically rejected by the State." 40 N.Y.2d at 669. Thus, the suit was timely based on the demand letter.

The Appellate Division, First Department, was faced with a similar situation in <u>Verizon New York v. Sprint</u>, <u>supra</u>, 43 A.D.3d 668. The contract between the two parties provided that Verizon would perform services for Sprint, whose cost it estimated to be $100,000, and Sprint would pay within 60 days of the signing of the contract. The final billing would determine whether the estimate was high or low and whether Verizon was entitled to an additional payment or Sprint was entitled to a partial refund. Sprint did not pay in advance but the work was begun and completed (in April 2000) nevertheless. Verizon billed Sprint in October 2000, demanding payment in a month. The invoice was not paid. On June 21, 2006, Verizon filed suit and Sprint moved to dismiss on the grounds that the action was time-barred.

The First Department ruled that the cause of action accrued on November 10, 2000, the date by which Verizon demanded payment, since only then did Verizon know that Sprint would refuse to pay. 43 A.D.3d at 686-87. The statute of limitations did not begin to run when the work was completed.

---

[13] The Court of Claims Act required that a suit be filed in the Court of Claims within six months of accrual of the claim.

Mainline Electric Corp. v. East Quogue Union Free School District, supra, 46 A.D.3d 859, involved an electrical contractor who was to be paid when the contract was fully performed and a final certificate for payment had been issued by the architect.    After the work was completed, there were discussions and negotiations and the corporation finally sued the school district after its letter demanding payment was ignored.    The suit was filed 14 months after the letter was sent; the statute established a one-year period following accrual of a cause of action to file a suit.    Rejecting the argument that the cause of action accrued when the contractor sent its final bill, the Second Department held that because the school district failed to show it "expressly or constructively rejected the plaintiff's final billing requisition at any point prior to the commencement of this action ..." the law suit was timely.    46 A.D.3d at 861.    In fact, the court held that the motion to file a late notice of claim was unnecessary; the cause of action may not have accrued at the time of the suit, since the obligation to pay was not triggered until a final certificate of payment was issued by the architect, which never happened.    46 A.D.3d at 861-62.

In short, Con Edison could not demand reimbursement under § 16 until it knew how much money it had expended in rebuilding the substation and replacing the equipment and how much it would be reimbursed by Port Authority pursuant to other contractual provisions.    As to the §§ 17 and 18 cause of action, Port Authority has made only a partial payment because it is negotiating with its insurance carrier, so any delay in making the demand is attributable to Port Authority's actions.

For all these reasons, the complaint filed in November 2007 was timely.

## POINT II

### THE NOVEMBER 2007 COMPLAINT DOES NOT VIOLATE THE RULE AGAINST CLAIM-SPLITTING.

Port Authority argues that the complaint must be dismissed because Con Edison was required to move to amend under Fed. R. Civ. P. 15(c) and because it violates the rule against claim-splitting. Because Con Edison is contemporaneously moving under Rules 15(c) and (d) to file an amended and supplemental complaint, this memorandum will respond only to the claim-splitting argument.

As a general rule, a plaintiff may not split claims by suing the defendant in one case and then bringing a second action asserting claims arising from the "same transaction" that could have been brought at the time the first case was filed. Legnani v. Alitalia Linee Aeree Italiane, S.P.A., 400 F.3d 139, 141 (2d Cir. 2005); Waldman v. Village of Kiryas Joel, 207 F.3d 105, 110 (2d Cir. 2000). The November complaint in this case does not violate this rule because Con Edison's contractual reimbursement claims were not even triggered at the time the original complaint was filed.

### A.    The Rule Against Claim-Splitting Does Not Bar a Complaint Asserting New Claims that Arose After a Prior Pleading was Filed.

Generally, the rule against claim-splitting prohibits a plaintiff from splitting its cause of action into separate grounds of recovery and raising the separate grounds in successive lawsuits. Waldman, 207 F.3d at 110. In applying this test, the Second Circuit has instructed that a court must be "careful" and that there should be no "rigid" test applied to the "complex problems that can arise from multiple federal filings." Curtis v. Citibank, N.A., 226 F.3d 133, 136, 138 (2d Cir. 2000). Rather, courts must consider the equities of the situation when determining the appropriate treatment of an allegedly duplicative filing. Curtis, 226 F.3d at 138.

The Second Circuit has explained the rule against claim-splitting (also called the rule against duplicative litigation) as "distinct from but related to the doctrine of claim preclusion or res judicata," and intended to serve similar policy goals - to foster judicial economy and the "comprehensive disposition of litigation," protect the parties from "the vexation of concurrent litigation over the same subject matter," and assure the finality of judgments. Curtis, 226 F.3d at 138. Accordingly, courts have often analyzed the issue of duplicative litigation by applying res judicata principles, including that a second suit is not barred if it does not involve the "same transaction or connected series of transactions as the earlier suit." Legnani, 400 F.3d at 141.

In determining whether a second suit involves the same transaction as the first, the "crucial date" is the date the complaint was filed. Legnani, 400 F.3d at 141. Thus, a plaintiff who could not have brought a particular cause of action in its initial complaint is free to bring that cause of action against the same defendant in a subsequent action. Id.

### B.   The Rule Against Claim-Splitting Does Not Bar Con Edison's Complaint Because the Port Authority's Obligations Under §§ 16, 17 and 18 Had Not Arisen at the Time the Original Complaint was Filed.

Under New York law, indemnification claims do not accrue until the party seeking indemnification has paid the funds for which indemnification is sought. McDermott v. City of New York, supra, 50 N.Y.2d at 216 (City's product liability claim to recover money paid to a city worker injured in a truck manufactured by the defendant accrued upon its paying the worker for the injuries, rather than on the date of delivery of the truck); Sprague v. Marshall, 15 A.D.3d 853, 853, 789 N.Y.S.2d 570 (4th Dept. 2005) (statute of limitations on action seeking contribution from a contractor who allegedly started a fire for which plaintiff had compensated his neighbor did not begin to run until the plaintiff had made payment to the neighbor); Office of Irwin G. Cantor v. Swanke Hayden Connell & Partners, 186 A.D.2d 71, 588 N.Y.S.2d 19 (1st Dept. 1992) (regardless of whether plaintiff engineer's contract claim had lapsed, its

indemnification claim against architect for damages engineer paid developer accrued at time of payment). "This principle stems from the nature of indemnification claims and does not vary according to the breach of duty for which indemnification is sought." McDermott, 50 N.Y.2d at 216, 428 N.Y.S.2d 211.

The original complaint in this case was filed in September 2002 and the amended complaint in December 2003, at a time when Con Edison had not yet incurred, much less paid, all the costs of rebuilding its substation, replacing its equipment and removing debris, the costs for which it now seeks reimbursement. Since it could not have brought a reimbursement claim when it filed the initial complaint, it is "free to bring [that claim] in a subsequent action." Legnani, 400 F.3d at 141.

### C.    The Rule Against Claim-Splitting Does Not Preclude the Filing of the Contractual Reimbursement Claims Simply Because They are Related to the Events of September 11, 2001.

The Second Circuit made clear in Curtis that neither a "rough resemblance" between complaints nor the fact that both complaints have similar facts as their genesis is a sufficient reason to dismiss the later complaint as duplicative. 226 F.3d at 138. The court must first assure itself that the claims asserted in both suits are the same. Curtis, 226 F.3d at 138. Thus, the fact that the Curtis plaintiffs' second complaint for retaliation and constructive discharge arose from the same hostile work environment and employer-employee relationship on which their first complaint was based was not sufficient reason to dismiss the second complaint. Curtis, 226 F.3d at 140-41.

Here, although the complaints are related, the claims are different. The original complaint primarily focuses on negligence in the context of the relationship of the parties as landlord and tenant pursuant to the lease between them; the current complaint alleges a breach of contractual indemnification provisions under specific sections of the lease without regard to

-22-

whether the acts or omission covering con Edison's loss were negligent. The Port Authority glosses over this difference and argues that because Con Edison's reimbursement would not have arisen but for 9/11, all potential claims in this case are part of the same "ball of wax." Port Authority Memo at 17. This "ball of wax" argument is similar to the "rough resemblance" analysis that the Second Circuit rejected in Curtis, 226 F.3d at 136. Undoubtedly had the tragic events of 9/11 not occurred Con Edison would have had no basis to invoke the contractual reimbursement clause (or to make the claims in the first complaint). But this linkage alone is not enough and ignores the critical and determinative fact that Con Edison had no right to reimbursement until it had paid the amounts for which it seeks reimbursement, circumstances that did not occur until after the original complaint.

## D. Public Policy and the Equities in this Case Favor Con Edison and its Right to Sue Port Authority for its Breach of Contractual Obligations.

Curtis teaches that the district court must consider "the equities of the situation" in determining the appropriate treatment of an allegedly duplicative filing. 226 F.3d at 138. The equities favor Con Edison and the policies and purposes behind the claim-splitting rule would not be served by dismissal.

Con Edison is the beneficiary of a lease provision entitling it to indemnification for the costs of rebuilding its substation and replacing its equipment if same were damaged by acts or omissions of Port Authority, its employees, agents or contractors. Lease § 16(b). This benefit was gained at the price of allowing Port Authority complete freedom in the construction of 7 WTC and giving up certain rights to sue for damages resulting from the construction. It would be unfair to deprive them of the benefit of this bargain. Further, Con Edison paid the premiums for the insurance Port Authority was obligated to get for the purpose of compensating Con Edison for its costs in replacing the substation should it be destroyed and carrying out debris

removal.  Having reimbursed Port Authority for the insurance premiums, Con Edison is entitled to the proceeds.  Finally, Con Edison has pursued its rights in negotiations with Port Authority until Port Authority constructively rejected Con Edison's May 18, 2007, demand for reimbursement.

The policies of fostering judicial economy, encouraging comprehensive disposition of litigation, protecting parties from the vexation of concurrent litigation and assuring finality of judgments would not be undermined by permitting Con Edison's claims to go forward.  Curtis recognizes that consolidation of the new action may be an appropriate disposition.  Curtis, 226 F.3d at 138. In this case, where there has been relatively little discovery with respect to Con Edison's claims against Port Authority, where the lease interpretation involves no additional fact issue, where the Court has already ordered discovery concerning the meaning of the contractual provisions, and where the question of the meaning and applicability of the lease provisions has already been part of the litigation, consolidating the November complaint with the original amended complaint (or, in the alternative, allowing the filing of an amended and supplemental complaint) will not create duplicative litigation or increase the workload of court or counsel, and will enable final resolution of all claims in one litigation.  The complaint should not be dismissed for claim-splitting.

## POINT III

### CON EDISON DID NOT TAKE A PRIOR INCONSISTENT POSITION THAT WAS RELIED ON BY THE COURT.

Judicial estoppel is an "equitable doctrine invoked by a court at its discretion," based upon factors such as whether a later position is "clearly inconsistent" with an earlier position and whether the party "has succeeded in persuading a court to accept that party's earlier position." New Hampshire v. State of Maine, 532 U.S. 742, 750 (2001).  The court should also consider

whether the party taking the inconsistent position would thereby gain "an unfair advantage or impose an unfair detriment on the opposing party if not estopped." Id. at 751. In this case, the positions are not clearly inconsistent, were not relied on by the court, and do not involve an unfair advantage or unfair detriment.

Port Authority claims that it was Con Edison's position in connection with Citigroup's motion to dismiss that "Port Authority had no liability under Section 16 for the events of September 11," because Con Edison argued that "Section 16 applied only to the original construction and related maintenance of WTC7, not to design flaws that caused its collapse 20 years later," and also that "[section 16] created no indemnification obligation by the Port Authority in any event" (Port Authority Memo at 18).

Without specifically identifying the claim with which these prior statements are supposedly inconsistent, Port Authority asserts that Con Edison is barred from filing an action "based on a claim they successfully opposed in an earlier action" (Port Authority Memo at 19). But the claim Con Edison opposed[14] in the prior action was Citigroup's theory that Port Authority was the sole liable party and has nothing to do with the claims in the November 2007 complaint.

Citigroup had moved to dismiss Con Edison's lawsuit, claiming that pursuant to Port Authority's lease with Con Edison, "Con Edison's exclusive remedy would be against the Port Authority" with respect to damage to the substation caused by the office tower built above the substation (D Ex E, p. 15). Citigroup argued that this conclusion flowed from the following lease provisions: that Port Authority would ensure that the construction of a building above the substation would not "unreasonably impair, endanger or interfere with the continuous use of the

---

[14] Whether successfully will be discussed below.

Substation Building by the Lessee," (Lease, § 8[a]), that Port Authority's exercise of its right to build the building would not be "the grounds of ... any claim or demand for damages" (Lease, § 8[b]), and that Port Authority agreed to bear the cost of repairing any damage to the substation occurring in connection with 7 WTC (Lease, § 16). (D Ex E at 13-15). Citigroup claimed that it was a third-party beneficiary of these provisions and therefore could not be held liable for damages caused by its negligence (D Ex E at 15).

Con Edison responded that the interpretation of the lease to make Port Authority the sole responsible party for damage to or destruction of the substation "fanciful[]" (D Ex F at 9). It argued, reasonably, that Port Authority's "express obligation to 'reimburse'" in no way barred other claims or limited Con Edison's ability to file other law suits (D Ex F at 11). "That interpretation," Con Edison said, "while wishful thinking, is simply not supported by the contract" (D Ex F at 11). Rather, the contractual remedy did not exclude Con Edison's right to sue Port Authority's employees, agents or contractors in negligence (D Ex F at 12).

Thus, Con Edison argued that in imposing an obligation on Port Authority to reimburse Con Edison for the costs of rebuilding its substation, the lease did not limit Con Edison's remedies against other responsible parties. Nothing about this argument can be construed as contradicting the arguments that Con Edison makes now - that under § 16, Port Authority's obligations included the obligation to indemnify Con Edison for the costs it paid to replace the substation and substation equipment as a result of actions or omission of its "agents, contractors or employees in connection with the construction or maintenance" of the building that § 8 contemplated would be built above it and that under §§ 17 and 18, Port Authority has an obligation to pay over the insurance proceeds for the replacement value of the building.

As the above discussion establishes, Port Authority has misconstrued one of the statements offered as the predicate for its claim. The contention that it was Con Edison's position that § 16 created no indemnification obligation by Port Authority is totally unsupported and, indeed, is contradicted by the Con Edison memorandum upon which Port Authority relies.

As to the second predicate, it is true that the memorandum in opposition to Citigroup's motion to dismiss appears to interpret § 16 in an unnecessarily limited way, saying that the provision applies only to construction and maintenance of 7 WTC and "not any premises defect case which might arise 20 years later" (D Ex F at 19). A reasonable interpretation is that Con Edison was arguing that the lease simply was not concerned with "premises defects" caused by tenants, i.e. Citigroup, who were not responsible for the construction and maintenance, and thus was irrelevant to the claim against Citigroup. What is most significant is that Port Authority has not explained how this statement is inconsistent with any positions taken in the November 2007 complaint.

In any case, judicial estoppel only applies where the prior inconsistent position was "somehow adopted by the first court." New Hampshire v. State of Maine, 532 U.S. at 750. See, also, Reynolds v. Commissioner of Internal Revenue, 861 F.2d 469, 473 (6th Cir. 1988) (The doctrine applies only where the "first court has adopted the position urged by the party, either as a preliminary matter or as part of a final disposition"). Cf. Ryan Operations v. Santiam-Midwest Lumber, 81 F.3d 355, 361 (3d Cir. 1996) (party need not have benefited from prior inconsistent position). No such thing happened in this case. This Court's opinion of January 12, 2006, resolving Citigroup's motion to dismiss did not adopt the position of either party, and certainly not that of Con Edison. Indeed, this Court did not even mention Con Edison's position. Instead,

it ruled that Citigroup's claim to be a third-party beneficiary could not be decided until Citigroup had filed its answer and there had been further discovery. 468 F.Supp.2d at 526.

Further, judicial estoppel only applies to factual statements, and neither of the statements flagged by Port Authority is factual; rather they are arguments concerning the interpretation of a contract. See Cleveland v. Policy Management Sys. Corp., 526 U.S. 795, 802 (1999) (where the Supreme Court rejected judicial estoppel in a case that did not involve "directly conflicting statements about purely factual matters"). See also, Parker v. Columbia Pictures Industries, 204 F.3d 326, 334 (2d Cir. 2000) (rejecting judicial estoppel where plaintiff now claiming disability discrimination said he was able to return to work but had said he was "completely incapacitated" in his application for long-term disability and SSI benefits); Mitchell v. Washingtonville Central School District, 190 F.3d 1 (2d Cir. 1999) (drawing a distinction between claims that one is too disabled to work and cannot stand or walk with claims that one can work with accommodations and can stand and walk); In re Worldcom, Inc. Securities Litigation, 308 F.Supp.2d 246, 248 (S.D.N.Y. 2004) (characterizing a claim that the consolidation of plaintiffs' actions would benefit the plaintiffs as well as defendants as an argument, not a factual contention, and not inconsistent with the assertion that preemption applied to the plaintiffs' cause of action).

In this case, at most, the statements were arguments concerning the construction of a legal document, more akin to the claim to be "disabled" than to an assertion that one is unable to walk or stand.

Because the doctrine is intended to penalize litigants who play fast and loose with the courts, most circuits have held that judicial estoppel applies only to intentional statements made to obtain an unfair advantage. Wight v. Bankamerica Corporation, 219 F.3d 79, 89 (2d Cir. 2000) ("Judicial estoppel is designed to prevent a party who plays fast and loose with the courts

from gaining unfair advantage through the deliberate adoption of inconsistent positions in successive suits."); Ryan Operations, 81 F.3d at 362 (The doctrine of judicial estoppel should not be invoked unless the prior inconsistent statement has been uttered "intentionally with the purpose of obtaining an unfair advantage."); Konstantinidis v. Chen, 626 F.2d 922, 939 (D.C. Cir. 1980); Chaveriat v. Williams Pipe Line Co., 11 F.3d 1420, 1438 (7th Cir. 1993); Total Petroleum, Inc. v. Davis, 822 F.2d 734 (8th Cir. 1987).  No such showing can be made here.

It was not advantageous to Con Edison to present an interpretation of the lease that could be construed as limiting its claims against Port Authority; its purpose in the prior litigation was to establish that whatever its rights against Port Authority, it still had rights against Citigroup.  It simply cannot be argued that Con Edison was trying to obtain an unfair advantage against any party by that assertion.  Importantly, Port Authority has failed to even allege, much less show, that it was prejudiced by the prior position.

In addition, Port Authority relies on one or two sentences in one point in one memorandum.  This should be compared with cases where the litigant persisted in the prior inconsistent position over and over again.  See, e.g., Mitchell, 190 F.3d 1 (statements made in an application to the Workers' Compensation Board, at a hearing before the Board, in an application for social security benefits, in a request for reconsideration of the denial, and in a hearing before a social security administrative judge).

Because the allegedly prior inconsistent positions were not inconsistent, were not relied on, and caused no prejudice, the complaint should not be dismissed under the judicial estoppel doctrine.

**POINT IV**

**THE COMPLAINT IS SUFFICIENTLY SPECIFIC TO
MEET THE REQUIREMENTS OF NOTICE PLEADING.**

The Port Authority complains that Con Edison's November 2007 complaint is not sufficiently specific to provide it with fair notice regarding the nature of the claims. To the contrary, the pleading more than meets the requirements of law.

Port Authority asserts that the complaint does not satisfy the liberal pleading requirements of Fed. R. Civ. P. 8 because "discovery has been ongoing for almost 5 years, over 800,000 pages have been produced and almost two-dozen depositions have been taken relating to World Trade Center 7 and the related contracts and agreements" (Port Authority Memo at 23). "Surely, plaintiffs can plead more specifically now" (Port Authority Memo at 25). In actuality, pre-trial discovery has not been ongoing for over five years. As this Court well knows except for very limited document production, discovery did not commence until Spring 2006, after motions to dismiss were decided. Moreover, few of the depositions referred to by counsel have focused on the cause of the collapse of the building. Con Edison and, we believe, all parties are actively engaged in computer modeling of the building collapse, and that process is ongoing. Critical depositions of design professionals will not be conducted until later this year, precluding Con Edison from more specifically alleging the acts or omissions, which led to the collapse of the building. Further, documents were destroyed during the events of 9/11, and investigating government agencies, which have been investigating for more than five years, have not issued a final report. Con Edison does not have access to documents obtained by those agencies, some of which they are unable to obtain elsewhere.

Notwithstanding that the specific cause or causes of the collapse have not yet been fully developed, Con Edison alleged in ¶ 23 of the November 2007 complaint that 7 WTC suffered a

-30-

"progressive global collapse" as a result of the fires and collapses of 1 and 2 WTC.  Con Edison

further alleged in ¶¶ 37-47 that the acts and omissions of the Port Authority include the design,

approval, inspection, installation, alteration, maintenance, operation, conduct and control of the

building and its (1) load-bearing structural systems, (2) structural modifications, and (3) diesel-

fueled power generation systems.

Thus, the complaint is specific in focusing upon the building's load-bearing structural

system and the diesel-fuel powered fuel generation systems within the building.  The Port

Authority is also aware of Con Edison's allegations that a building of this type, design and

construction should not collapse as a result of fire.  No legal authority requires that Con Edison

spell out in the complaint which trusses, beams or columns were defectively designed, or

specifically which features of the SSB fuel oil delivery system lacked the appropriate safety

devices to prevent a deluge of fuel oil within the building.

In short, the complaint is sufficiently specific that the acts and omissions of the Port

Authority involved, among other things, design and approval of load-bearing structural systems,

which suffered global collapse on 9/11 and of the diesel-fuel powered generation systems that

"caused the destruction of the building and substation."  This is the short and plain statement

required by Fed. R. Civ. P. 8.  See Swierkiewicz v. Sorema, N.A., 534 U.S. 506, 512 (2002).

See also, Bhaduri v. Summit Security Services, 2006 WL 2290766 (S.D.N.Y., dec. 8/8/06).

Because of the availability of discovery and other pretrial procedures, "all pleadings shall be so

construed [liberally] so as to do substantial justice."  Fed. R. Civ. P. 8(f).

It is disingenuous for Port Authority to suggest that it has not been given fair notice of the

nature of Con Edison's claims or the grounds upon which they rest.  Port Authority knows the

focus of Con Edison's inquiries.  While Con Edison expects, at the conclusion of fact discovery,

to be better able to specify the structural and mechanical defects that were the result of Port Authority's acts and omissions, notice pleading does not require that type of specificity. It is also startling to see Port Authority's statement that the most "defendant can glean" is that the diesel-fuel powered generation systems have something to do with Con Edison's claim (Port Authority Memo at 25). Port Authority ignores Con Edison's allegations regarding the design of the load-bearing structural systems in the building and would be hard-pressed to seriously deny knowledge that Con Edison's claims also focus on certain trusses and columns at the building's core.

Port Authority relies on Gillespie v. Ancona, 1999 WL 66538 (D. Conn. 1999), which relies on Boston & Maine Corp. v. Town of Hampton, 987 F.2d 855 (1st Cir. 1993). Boston & Maine has been overruled on the very point of the specificity required, in Educadores Puertorriquenos en Accion v. Hernandez, 367 F.3d 61 (1st Cir. 2004). In a lengthy discussion, the First Circuit abandoned the heightened pleading standard for civil rights cases like Boston & Maine, recognizing it had been undermined by recent Supreme Court decisions. 367 F.3d at 63-66. Even in Boston & Maine, the court pointed out that such details are not required in a pleading so long as the complaint, though not undertaking a "comprehensive catalog," provided the defendant fair notice of what plaintiff's claim is and the grounds upon which it rests. 987 F.2d at 865.

There is no heightened specificity requirement for the type of allegations alleged by Con Edison against Port Authority. Moreover, the details of Port Authority's involvement in reviewing the structural design of the building and the design of the fuel systems are not details that are readily available to Con Edison without pre-trial discovery. While Port Authority suggests that Con Edison should now have this information based upon the discovery to date,

that is disputed, as many of the witnesses produced by Port Authority have not been able to describe what, if any, considerations were given by the structural and mechanical engineering designs submitted to it.

The Court has already rejected the motions alleging a lack of specificity in Con Edison's complaint, albeit in the context of the 2002 negligence complaint against the Port Authority and the City of New York, and also in the context of the 2004 complaint that Con Edison filed against Silverstein, Citigroup and the design and construction defendants. This Court should now also reject the Port Authority's efforts to obtain dismissal of the contact complaint on the same basis.

## CONCLUSION

The November 2007 complaint is timely, does not split claims, is not subject to the judicial estoppel doctrine and is sufficiently specific. The motion to dismiss should be denied.


Dated: April 1, 2008


                                        Respectfully submitted,


                                        By:___S/Franklin M. Sachs_____
                                            Franklin M. Sachs (FS 6036)
                                            GREENBAUM, ROWE, SMITH & DAVIS LLP
                                            Attorneys for Plaintiffs
                                            Metro Corporate Campus One
                                            P.O. Box 5600
                                            Woodbridge, new Jersey 07095-0988
                                            (732) 549-5600
                                            *Attorneys for Plaintiffs*