UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------------X
                                      :

IN RE SEPTEMBER 11 PROPERTY DAMAGE    :        21 MC 101 (AKH)
AND BUSINESS LOSS LITIGATION           :

                                        :
-------------------------------------------------------------------X
                                        :

CONSOLIDATED EDISON COMPANY OF      :
NEW YORK, INC., et al.,               :        07 CV 10582 (AKH)

                                        :

                       Plaintiffs,      :

                                        :

     - against -                   :

                                        :

THE PORT AUTHORITY OF NEW YORK AND    :
NEW JERSEY,                        :

                                        :

                     Defendant.     :
-------------------------------------------------------------------X

**REPLY MEMORANDUM OF LAW IN SUPPORT OF
MOTION BY DEFENDANT THE PORT AUTHORITY OF
NEW YORK AND NEW JERSEY TO DISMISS THE COMPLAINT**

SCHIFF HARDIN LLP
900 Third Avenue
New York, New York 10022
Telephone: (212) 753-5000

Attorneys for Defendant
The Port Authority of New York and New Jersey

Beth D. Jacob (BJ6415)
Donald A. Klein (DK7821)
Jeanne Cho (JC4631)

# TABLE OF CONTENTS

Preliminary Statement .................................................................................................1

Argument ....................................................................................................................3

    POINT I    Plaintiffs' Contract Claims Are Time-Barred ...............................3

      A.    Plaintiffs' Claims Accrued On September 11, 2001. ...........................3

      B.    Even If Mischaracterized As Claims For Indemnification Or Reimbursement, Plaintiffs' Claims Accrued On September 11. ...........................5

      C.    Plaintiffs' Claims For Insurance Proceeds Accrued On September 11. .........................7

      D.    Plaintiffs' Claims Are Barred Even If They Accrued When Con Ed Made Remediation Payments. ...........................8

      E.    Plaintiffs' Demand For Payment And Its Purported Rejection By The Port Authority Are Irrelevant To The Accrual Of Plaintiffs' Contract Claims. ...................10

      F.    In Any Event, Plaintiffs Cannot Revive Or Extend The Statute Of Limitations By Making Repeated Demands For Payment. ...................12

      G.    Certainty Regarding The Amount Of Plaintiffs' Damages Is Not Required For Its Contract Claims To Accrue. ...................13

    POINT II    Plaintiffs' Fifth Complaint Violates The Rule Against Claim Splitting ..............14

    POINT III    Plaintiffs Are Estopped From Taking A Position Contrary To One Taken Previously Before This Court ...................16

      A.    Plaintiffs' Statements In Opposition To Citigroup's Motion To Dismiss Are Plainly Inconsistent With The Allegations In Their Fifth Complaint. ...................16

      B.    This Court Sufficiently "Adopted" Plaintiffs' Prior Inconsistent Assertions In Denying Citigroup's Motion To Dismiss As Premature. ...................18

      C.    Plaintiffs' Statements Regarding Interpretation Of The Lease Qualify As Statements Subject To Judicial Estoppel. ...................19

    POINT IV    The Fifth Complaint Must Be Dismissed For Lack Of Specificity ...................21

Conclusion ...................22

## TABLE OF AUTHORITIES

**CASES**

*815 Park Ave. Owners, Inc. v. Fireman's Ins. Co. of Wash., D.C.*, 225 A.D.2d 350, 639 N.Y.S.2d 325 (1st Dep't 1996).........................................................................6, 7

*A.I. Trade Fin., Inc. v. Centro Internationale Handelsbank AG*, 926 F.Supp. 387 (S.D.N.Y. 1996)..........................................................................................................18

*AFN, Inc. v. Schlott, Inc.*, 798 F.Supp. 219 (D.N.J. 1992) ..............................................19

*Allen v. Zurich Ins. Co.*, 667 F.2d 1162 (4th Cir. 1982)...................................................20

*Am. Stock Exchange, LLC v. Mopex, Inc.*, 215 F.R.D. 87 (S.D.N.Y. 2002) ...................15

*Argonaut Partnership, L.P. v. Bankers Trustee Co. Ltd.*, 1997 WL 45521 (S.D.N.Y. Feb. 4, 1997)...............................................................................................13

*Boston & Maine Corp. v. Town of Hampton*, 987 F.2d 855 (1st Cir. 1993) ...................22

*Brookhaven v. MIC Prop. and Cas. Ins. Corp.*, 245 A.D.2d 365, 668 N.Y.S.2d 37 (2d Dep't 1997)...........................................................................................................................11

*Camotex, S.R.L. v. Hunt*, 741 F.Supp. 1086 (S.D.N.Y. 1990) ........................................14

*City of New York v. State of New York*, 40 N.Y.2d 659, 389 N.Y.S.2d 332 (1976).......11

*Costello v. Allstate Ins. Co.*, 230 A.D.2d 763, 646 N.Y.S.2d 695 (2d Dep't 1996)...................6, 7

*Curtis v. Citibank, N.A.*, 226 F.3d 133 (2d Cir. 2000)....................................................15

*Ely-Cruikshank Co., Inc. v. Bank of Montreal*, 81 N.Y.2d 399, 599 N.Y.S.2d 501 (1993)..........13

*Gillespie v. Ancona*, 1999 WL 66538 (D.Conn. 1999) ..................................................22

*Grace Indus., Inc. v. New York City Dep't of Transp.*, 22 A.D.3d 262, 802 N.Y.S.2d 409 (1st Dep't 2005)..................................................................................11

*Helfand v. Gerson*, 105 F.3d 530 (9th Cir. 1997)............................................................19

*Helmer-Cronin Constr. v. Beacon Cmty. Dev.*, 156 A.D.2d 543, 549 N.Y.S.2d 50 (2d Dep't 1989) ..........................................................................................................11

*Humetrix, Inc. v. Gemplus S.C.A.*, 268 F.3d 910 (9th Cir. 2001).................................19

*In re Cassidy*, 892 F.2d 637 (7th Cir. 1990)...................................................................19

*In re Continental Ins. Co. v. Richt*, 253 A.D.2d 818, 677 N.Y.S.2d 634 (2d Dep't 1998) ...........14

*In re Methyl Tertiary Butyl Ether ("MTBE") Prods. Liability Litig.*, 2007 WL 1601491
    (S.D.N.Y. June 4, 2007) ............................................................................................10

*In re September 11 Property Damage and Business Loss Litig.*, 468 F.Supp. 2d 508
    (S.D.N.Y. 2006)...................................................................................................3, 20, 22

*Irwin G. Cantor v. Swanke Hayden Connell & Partners*, 186 A.D.2d 71, 588 N.Y.S.2d 19
    (1st Dep't 1992)......................................................................................................15

*JCH Delta Contracting, Inc. v. City of New York*, 44 A.D.3d 403, 843 N.Y.S.2d 245
    (1st Dep't 2007).......................................................................................................13

*Jett v. Zink*, 474 F.2d 149 (5th Cir. 1973) ..................................................................20

*Joseph Gaier P.C. v. Iveli*, 287 A.D.2d 375, 731 N.Y.S.2d 692 (1st Dep't 2001)......................12

*Kassner v. City of New York*, 46 N.Y.2d 544, 415 N.Y.S.2d 786 (1979) ...................................11

*Kubin v. Miller*, 801 F.Supp. 1101 (S.D.N.Y. 1992)...........................................................19

*LNC Investments, Inc. v. First Fidelity Bank*, 1994 WL 73648 (S.D.N.Y. Mar. 3, 1994)............14

*Lydon v. Boston Sand & Gravel Co.*, 175 F.3d 6 (1st Cir. 1999)............................................20

*Mainline Elec. Corp. v. East Quogue Union Free School Dist.*, 46 A.D.3d 859,
    849 N.Y.S.2d 92 (2d Dep't 2007) ...............................................................................11

*McDermott v. City of New York*, 50 N.Y.2d 211, 406 N.E.2d 460, *rearg. denied*
    50 N.Y.2d 1059 (1980)........................................................................................6, 15

*McKinnon v. Patterson*, 568 F.2d 930 (2d Cir. 1977) .......................................................22

*Mitchell v. Washingtonville Cent. School Dist.*, 190 F. 3d 1 (2d Cir. 1999) ...............................18

*Mroz v. City of Tonawanda*, 999 F.Supp. 436 (W.D.N.Y. 1998).............................................4

*Phillips Constr. Co. v. City of New York*, 61 N.Y.2d 949, 463 N.E.2d 585, 475 (1984) ........12, 13

*Privat Air, S.A. v. Port Authority of New York and New Jersey*, 2007 WL 2089285
    (E.D.N.Y. July 19, 2007)...........................................................................................4

*Sprague v. Marshall*, 15 A.D.3d 853, 789 N.Y.S.2d 570 (4th Dep't 2005)...................................15

*State of New York v. City of Binghamton*, 72 A.D.2d 870, 421 N.Y.S.2d 950 (3d Dep't 1979)...10

*State of New York v. Stewart's Ice Cream Co.*, 64 N.Y.2d 83, 473 N.E.2d 1184 (1984) ...............6

*Union Turnpike Assoc., LLC v. Getty Realty Corp.*, 27 A.D.3d 725, 812 N.Y.S.2d 828 (2d Dep't 2006) ...................................................................................................10

*United States v. West Prods., Ltd.*, 168 F.Supp.2d 84 (S.D.N.Y. 2001) ......................................19

*Verizon New York v. Sprint PCS*, 43 A.D.3d 686, 841 N.Y.S.2d 529 (1st Dep't 2007)...............12

*VTech Holdings Ltd. v. Lucent Techs., Inc.*, 172 F.Supp.2d 435 (S.D.N.Y. 2001)........................9

*Warda v. Commissioner of Internal Revenue*, 15 F.3d 533 (6th Cir. 1994)..................................20

*Yonkers Contracting Co., Inc. v. Port Authority Trans-Hudson Corp.*, 93 N.Y.2d 375, 690 N.Y.S.2d 512 (1999)............................................................................................................9

## STATUTES

New York Unconsol. Law §§ 7107 and 7108 .....................................................................*passim*

## OTHER AUTHORITIES

5 Alan Wright & Arthur Miller, Federal Practice and Procedure § 1215 (2007)..........................21

## PRELIMINARY STATEMENT

The Port Authority of New York and New Jersey submits this reply memorandum of law in support of its motion to dismiss plaintiffs' Fifth Complaint.[1]

Plaintiffs have presented no persuasive argument why their Fifth Complaint should survive dismissal. The two claims in the Fifth Complaint, both for breach of contract, plainly accrued on September 11, 2001, when the Con Ed Substation was destroyed. Plaintiffs' failure to assert those claims within one year of accrual, as required by Sections 7107 and 7108 of the New York Unconsolidated Laws, deprives this Court of subject matter jurisdiction over them. In an effort to avoid this absolute bar, plaintiffs have now advanced at least five different accrual dates for the same claims.[2] In their latest gambit to evade the expiration of their claims, plaintiffs seek artificially to divorce their contract claims from the destruction of the Substation, claiming instead that their claims accrued only when Con Ed made remediation payments to rebuild the Substation and remove debris, not when it was destroyed. However, the Fifth Complaint itself explicitly alleges that plaintiffs' claims arise directly from the events of September 11; plaintiffs have previously conceded that the claims accrued on September 11; and this Court has already so found. Moreover, plaintiffs' argument that their claims accrued only upon Con Ed's remediation payments does not help them. This Court would still lack subject

---

[1] Capitalized terms have the same meaning as in the Port Authority's Memorandum of Law In Support of Motion to Dismiss the Complaint, dated February 11, 2008 ("Port Authority Mem.").

[2] Thus, plaintiffs have variously asserted that these claims accrued on: (*a*) September 11, *see* Jacob Dec. ¶ 15, Ex. N at 10:4-12 (oral argument on plaintiffs' previous motion to supplement); (*b*) June 7, 2007, when the Port Authority allegedly rejected plaintiffs' demands for payment, *see* Jacob Dec. ¶ 15, Ex. N at 5:1-2, 22:19-22 (oral argument on plaintiffs' previous motion to supplement); (*c*) the date Con Ed finished making payments to rebuild the substation, *see* Memorandum of Law in Opposition to Motion to Dismiss Complaint ("Plaintiffs Mem.") 12-19; (*d*) such time as their contractual damages are final, quantifiable, and certain, *id.* 14-19 and (*e*) the date that the Port Authority recovers insurance payments from its carriers, *id.* 15.

matter jurisdiction, because Con Ed made these payments more than one year before they filed their Fifth Complaint.

Plaintiffs' alternative, inconsistent argument that their claims accrued only after the Port Authority's most recent rejection of Con Ed's demand for payment flies in the face of well-settled New York case law holding that a contract claim accrues once the plaintiff has the right to payment, regardless of any demand. In any event, plaintiffs demanded reimbursement for their remediation payments well over one year before plaintiffs filed their Fifth Complaint. Plaintiffs cannot revive and extend their time to bring their actions by serving repeated, redundant demands, as they attempted to do by serving a new demand in May 2007. Nor are plaintiffs correct that their claims do not accrue until the total amount of their damages is final, quantifiable and certain.

Plaintiffs' claims are also barred by estoppel against inconsistent pleadings. Plaintiffs successfully opposed Citigroup's motion to dismiss by forcefully asserting an interpretation of Section 16 as limited to the period of active construction, thus effectively disavowing any claim against the Port Authority under that section arising out of the destruction of the Substation on September 11. Plaintiffs' contention that their present assertions are not inconsistent with their prior interpretation of Section 16 of the Con Ed Lease ignores the facts.

Finally, it is not the case that the Fifth Complaint adequately notifies the Port Authority of the nature of, or bases for, plaintiffs' claims. The Port Authority does not know whether plaintiffs claim that there was a design flaw in the original building, or that there was a diesel-fuel fed fire related to a tenant's back-up generator system that operated on a nearby transfer truss (or other supporting feature) to initiate the collapse, or some other theory.

- 2 -

Plaintiffs make statements throughout their memorandum of law asserting that this Court has already ruled on the interpretation and meaning of the Lease. This is not correct; this Court has never had the opportunity to rule on the contract construction in any motion or proceeding involving the Port Authority. As this Court ruled in denying Citigroup's motion to dismiss, a ruling on the meaning of the contract provisions would be premature based on the record and arguments before it. *In re September 11 Property Damage and Business Loss Litig.*, 468 F.Supp. 2d 508, 526-27 (S.D.N.Y. 2006). Statements the Court may have made in *dicta* while deciding other disputes involving other parties are not binding. For example, the Court's *dicta* that the Port had agreed to indemnify tenants is disproven by the contract language and all of the testimony taken so far in discovery; it is nothing more than an unsupported allegation made by Citigroup in its denied motion to dismiss. *E.g.*, Plaintiffs Mem. 6 n. 6. The Port Authority does not argue the contract interpretation in these papers, but its silence should not be taken as agreement with plaintiffs' mistatements concerning the meaning and import of the contract terms.

## **ARGUMENT**

### **POINT I**

### **PLAINTIFFS' CONTRACT CLAIMS ARE TIME-BARRED.**

#### A.   **Plaintiffs' Claims Accrued On September 11, 2001.**

Plaintiffs' claims in the Fifth Complaint accrued on September 11, 2001, when Con Ed's Substation was destroyed by the collapse of WTC7. Plaintiffs' failure to bring such claims within one year of their accrual deprives this Court of subject matter jurisdiction over them. N.Y. Unconsol. Laws §§ 7107, 7108; *Privat Air, S.A. v. Port Authority of New York and New*

*Jersey*, 2007 WL 2089285, at *1-2 (E.D.N.Y. July 19, 2007) (*citing Mroz v. City of Tonawanda*, 999 F. Supp. 436, 454 (W.D.N.Y. 1998); *see also* Port Authority Mem. 11-15.

Plaintiffs' argument that the claims in its Fifth Complaint only recently accrued cannot survive scrutiny. Rather, as this Court recognized when Plaintiffs first sought to add these new contract claims, they plainly are not "brand new cause[s] of action," but rather go "back to the original claim, what was destroyed on September 11, 2001," and are part of the same "ball of wax." Jacob Dec. ¶ 15, Ex. N at 18:3-6, 22; 19:3-5 (oral argument on plaintiffs' previous motion to supplement); *see also* Port Authority Mem. 6. Moreover, plaintiffs twice have conceded that contract claims identical to those asserted in their Fifth Complaint arose on September 11, 2001. First, they sought to add these claims as an amendment to their original pleadings (their Third Complaint), explicitly relying on their original Notice of Claim (which states that plaintiffs' claims accrued on September 11, 2001). Declaration of Jeanne Cho, dated May 9, 2008 ("Cho Dec.") ¶ 2, Ex. A (plaintiffs' Third Complaint). Second, plaintiffs sought to file these claims as a new action (the Fourth Complaint), also specifically relying on their original Notice of Claim. *See* Jacob Dec. ¶ 15, Ex. N at 10:4-12 (oral argument on plaintiffs' previous motion to supplement); *see also* Port Authority Mem. 5-6, 14.

These contract claims are not, as plaintiffs now would have it (*see* Plaintiffs Mem. 12-19), claims for indemnification or insurance proceeds that are divorced from the property damage that Con Ed suffered on September 11. Plaintiffs seek to distinguish any direct claim for property damage in the Fifth Complaint – which they disavow – from claims for reimbursement or indemnification for their expenses for rebuilding the Substation, replacing equipment, and removing debris. *See* Plaintiffs Mem. 14. In fact, however, the Fifth Complaint explicitly seeks recovery for Con Ed's property damage, rather than its remediation payments, and unmistakably

alleges that all of plaintiffs' alleged damages arose from the destruction of the Substation on September 11. Jacob Dec. ¶ 2, Ex. A, ¶¶ 24-25 (plaintiffs' Fifth Complaint) ("The collapse of the Building completely destroyed the Substation. As a result of the collapse of the Building, Con Edison's substation, cables, equipment and other property were destroyed."); ¶ 38 ("Con Edison and the Aegis insurers suffered damages as a result of the destruction of the Substation"); ¶ 39, 50 ("Such expenses were incurred by reason of damage to the Substation or its related equipment. . . .").

Moreover, plaintiffs have repeatedly characterized their new contract claims as simply seeking the same property damages as sought in their original negligence claims – and have never before advanced their new theory that remediation payments are somehow unrelated to such damages. For example, plaintiffs previously told this Court in describing these same contract claims: "The damages which are sought in this complaint are no different than the tort damages which are already extant in this suit. The only difference is the theory under which recovery is sought. . . ." Jacob Dec. ¶ 15, Ex. N at 11:23 – 12:3 (oral argument on plaintiffs' previous motion to supplement). Also, in their letter of May 18, 2007, to the Port Authority, demanding payment for the claims asserted in their Fifth Complaint (Plaintiffs Mem. 8-9), plaintiffs stated that "[t]he claims referred to in this letter include some of the same damages sought in the tort litigation, but they are now additionally premised on contract, based on the Lease." Jacob Dec. ¶ 16, Ex. O (plaintiffs' Sept. 21 Notice of Claim with May 18 letter attached).

**B.    Even if Mischaracterized As Claims For Indemnification Or Reimbursement, Plaintiffs' Claims Accrued On September 11.**

In support of their contention that their new claims accrued only when Con Ed made remediation payments (Plaintiffs Mem. 14-15), plaintiffs cite only inapposite third-party

indemnification cases in which the first and only loss suffered by the party seeking indemnification was incurring liability for another's injury – as when a defendant is held liable for a plaintiff's injury, then seeks indemnification from a third party. *McDermott v. City of New York*, 50 N.Y.2d 211, 406 N.E.2d 460, *rearg. denied* 50 N.Y.2d 1059 (1980) (defendant was held liable for its employee's injuries arising from malfunction of a truck, then sought indemnification from the truck manufacturer). These cases are unremarkable, and merely follow the traditional rule that an indemnification claim accrues when "any loss is suffered by the party seeking indemnity." *State of New York v. Stewart's Ice Cream Co.*, 64 N.Y.2d 83, 88, 473 N.E.2d 1184, 484 (1984). Because the underlying property damage or personal injury was not suffered by the party seeking indemnification in these cases, they do not apply here.

In contrast, this is a two-party case in which Con Ed seeks reimbursement for property damage that it suffered itself. In cases such as this, New York courts have uniformly held that the indemnification claim accrues on the date of the property damage, not upon the subsequent payments to remediate such damage. *815 Park Ave. Owners, Inc. v. Fireman's Ins. Co. of Wash., D.C.*, 225 A.D.2d 350, 352, 639 N.Y.S.2d 325, 327 (1st Dep't 1996) (plaintiff's claim for indemnification accrued as of the date of the property damage for which indemnification was sought, as did plaintiff's claims for reimbursement for ongoing monetary damages (lost rents) arising from such property damage); *Costello v. Allstate Ins. Co.*, 230 A.D.2d 763, 646 N.Y.S.2d 695, 696 (2d Dep't 1996) (plaintiff's claim for indemnification under an insurance policy for property damage accrued on "the date of the catastrophe insured against"). *See also* Port Authority Mem. 13-14.

Plaintiffs have no effective response to these cases, attempting to distinguish them, irrelevantly, on the ground that they construed "particular provisions of first-party insurance

contracts." Plaintiffs Mem. 13. In fact, these cases apply directly here. The "particular

provisions" of the insurance policies at issue required the policyholders to commence suit within

a certain period from the "date of loss," and thus tracked the traditional common law rule that an

indemnification claim accrues as of the date of loss. The *815 Park Ave. Owners* and *Costello*

courts held that the date of loss was the date of the original property damage – not the date that

the insureds expended funds to remediate such property damage. That common law principle

applies with equal force in this case to answer the question of when plaintiffs' loss occurred and

therefore when their cause of action accrued.

**C.    Plaintiffs' Claims For Insurance Proceeds Accrued On September 11.**

Although it is not clearly pleaded in the Fifth Complaint, in their memorandum of law

plaintiffs argue that they are claiming insurance proceeds under Sections 17 and 18 of the Lease

and that that cause of action has not yet accrued, since the Port Authority concededly is in the

process of negotiating the adjustment of that claim. While plaintiffs' interpretation of Sections

17 and 18 is inaccurate, that issue need not be decided now. Under any of the various theories

concerning when the cause of action accrued, plaintiffs' complaint must be dismissed. As with

the other claims for damages arising from the events of September 11, plaintiffs' claim under

Sections 17 and 18 of the Lease accrued on September 11, 2001, the date of their loss, with the

destruction of the Substation which created their right to payment for their loss. Contrary to

plaintiffs' argument (Plaintiffs Mem. 14-15), nothing in Section 18 provides that Con Ed's

rebuilding is a condition precedent to its entitlement to insurance proceeds.[3]

---

[3] Section 18 reads: "If the premises or any part thereof shall be destroyed . . . then the Lessee
shall proceed with due diligence to make and perform the necessary repairs, rebuilding or replacements
and to restore such premises in accordance with the plans and specifications for the premises as they
existed prior to such destruction or damage. . . . If such destruction or damage is covered by insurance,
the proceeds thereof shall thereafter be made available to the Lessee for the foregoing purposes." Jacob
Dec. ¶ 18, Ex. P (Lease).

Plaintiffs' alternative theories are to no avail. First, plaintiffs argue that their cause of action does not accrue until they pay for the rebuilding of the Substation. If that is the standard, however, then it accrued when plaintiffs made their remediation payments, years before they brought their Fifth Complaint.[4] Second, plaintiffs argue that their cause of action does not accrue until the Port Authority receives all of the insurance payments due. Plaintiffs Mem. at 15. Since that has not yet happened, under this theory plaintiffs' complaint is premature and should be dismissed

### D. Plaintiffs' Claims Are Barred Even If They Accrued When Con Ed Made Remediation Payments.

Plaintiffs' claims for reimbursement would be untimely and this Court would lack subject matter jurisdiction even if they arose as of the date that Con Ed made its remediation payments, as plaintiffs also contend. Plaintiffs Mem. 14-15. Plaintiffs fail to plead the dates of their payments, but they can be inferred. According to plaintiffs' own opposition papers, all or nearly all of Con Ed's remediation expenses probably incurred before June 2004, when the replacement Substation became operational. *See* Declaration of Franklin M. Sachs, dated April 1, 2008 ¶ 10. Plaintiffs do not suggest otherwise, asserting only that certain disputes with the contractors and suppliers regarding such costs "are still not finally resolved." *Id.* ¶ 11. Any such disputes, however, must be incidental, since according to plaintiffs' demand letter of May 18, 2007, all the amounts that plaintiffs seek in their Fifth Complaint ($129,341,259) had been incurred and "expended" already. Jacob Dec. ¶ 16, Ex. O (plaintiffs' Sept. 21 Notice of Claim with May 18 letter attached).

---

[4] Plaintiffs do not plead the date of their remediation payments, but they do plead that the Substation became operational in June 2004 and documents produced during discovery indicate that $123 million had been paid by the end of 2005.

Plaintiffs' failure to plead sufficient facts to show jurisdiction also permits dismissal of the complaint, since they bear the burden of pleading compliance with the requirements of Sections 7107 and 7108 in order to invoke the subject matter jurisdiction of the Court. *Yonkers Contracting Co., Inc. v. Port Authority Trans-Hudson Corp.*, 93 N.Y.2d 375, 378-79, 690 N.Y.S.2d 512, 514-15 (1999) (time limit for commencement of the action "is an ingredient of the cause [of action]" that is "an integral part of it, and the condition precedent to the maintenance of the action at all") (internal citations omitted); Jacob Dec. ¶ 15, Ex. N at 5-6 (oral argument on plaintiffs' previous motion to supplement) (plaintiffs concede that satisfaction of the jurisdictional notice of claim requirement must be pled); Plaintiffs Mem. 10-11 (earlier complaint was defective because it "did not allege the filing of the requisite, pre-pleading notice of claim required by McKinney's Unconsolidated Laws §§ 7107, 7108"). In addition, documents produced by plaintiffs in discovery indicate that Con Ed had paid at least $31 million in remediation costs by August 2003 and that an additional $92 million was expected to have been paid by the end of 2005 – amounts that approximate the total amount ($129 million) claimed in the Fifth Complaint. Cho Dec. Dec. ¶ 3, Ex. B (Con Ed's remediation costs).[5]

No New York authority holds that where an indemnitee makes multiple payments, its claim for indemnification accrues only when it makes its final payment. Instead, as a matter of New York law, an indemnification claim accrues when the plaintiff suffers any loss (*see* discussion *supra*) – or, in the case of a third-party indemnity, when the plaintiff makes each payment. *Union Turnpike Assoc., LLC v. Getty Realty Corp.*, 27 A.D.3d 725, 812 N.Y.S.2d 828

---

[5] The Court may take judicial notice of these documents on a motion to dismiss. Plaintiffs' May 18, 2007, demand letter, which was attached to Plaintiffs' September 21, 2007, notice of claim, referenced in the Fifth Complaint, expressly notes that "[d]ocumentation supporting these [remediation amounts] has already been produced in the pending tort litigation." Jacob Dec. ¶ 16, Ex. O. On a motion to dismiss, the Court may consider "documents referenced in [the] complaint and documents that are in [the] plaintiff's possession or that the plaintiff knew of and relied on in bringing suit." *VTech Holdings Ltd. v. Lucent Techs., Inc.*, 172 F.Supp.2d 435, 437 (S.D.N.Y. 2001).

(2d Dep't 2006) (limitations period for an indemnification claim "begins to run when the plaintiff suffered a loss by paying the debt for which it alleges the defendant should be held responsible, and a new, separate cause of action accrues each time a payment is made"); *In re Methyl Tertiary Butyl Ether ("MTBE") Prods. Liability Litig.*, 2007 WL 1601491 (S.D.N.Y. June 4, 2007) ("a new indemnity claim with its own new statute of limitations accrues every time the party seeking indemnity makes a payment").

As set forth above, all of plaintiffs' contract claims accrued on September 11, 2001. But if plaintiffs were correct that their claims accrued as of the date of their remediation payments, any payments made before November 26, 2006 would still be time-barred. Because it is almost certain (and plaintiffs have not shown otherwise) that all the remediation payments in question were made before that date, plaintiffs' claim for indemnification under Section 16 must be dismissed.

E.    **Plaintiffs' Demand For Payment And Its Purported Rejection By The Port Authority Are Irrelevant To The Accrual Of Plaintiffs' Contract Claims.**

Plaintiffs also contend – inconsistently with their assertion that their new contract claims accrued upon Con Ed's remediation payments – that such claims accrued only after they had demanded payment from the Port Authority and such demand had been rejected. Plaintiffs Mem. 12, 15-16. That argument has been rejected repeatedly by New York courts. Under New York law, a cause of action for payment under a contract accrues the moment that the plaintiff has the right to payment, regardless of whether any demand is made. "The Statute of Limitations begins to run when the right to make the demand for payment is complete, and the plaintiff will not be permitted to prolong the Statute of Limitations simply by refusing to make a demand." *State of New York v. City of Binghamton*, 72 A.D.2d 870, 421 N.Y.S.2d 950 (3d Dep't 1979) (although statute required the plaintiff to give notice as a condition to being paid, plaintiff's cause of action

nonetheless arose the moment it had the right to make the demand for payment); *see also Brookhaven v. MIC Prop. and Cas. Ins. Corp.*, 245 A.D.2d 365, 668 N.Y.S.2d 37 (2d Dep't 1997) (cause of action accrued once plaintiff had legal right to payment, and plaintiff could "not extend the Statute of Limitations by simply failing to make a demand"). Thus, again, plaintiffs' contract claims accrued on September 11, the date that plaintiffs were damaged and had the alleged right to payment for their losses.

In arguing that a demand and rejection is necessary for accrual, plaintiffs cite cases – well-recognized as exceptions to the general rule – in which the contract explicitly required a demand as a condition precedent to payment. *Kassner v. City of New York*, 46 N.Y.2d 544, 549-50, 415 N.Y.S.2d 786 (1979) (plaintiff's right to payment was expressly conditioned upon a certificate of final payment having been filed and an audit having been completed); *City of New York v. State of New York*, 40 N.Y.2d 659, 668, 389 N.Y.S.2d 332 (1976) (contract imposed a "requirement of a comptroller's audit" as a "precondition to the right to receive payment"); *Mainline Elec. Corp. v. East Quogue Union Free School Dist.*, 46 A.D.3d 859, 860, 849 N.Y.S.2d 92 (2d Dep't 2007) (defendant's "obligation to make payment was not triggered until the issuance of a final certificate for payment by the project architect"); *Helmer-Cronin Constr. v. Beacon Cmty. Dev.*, 156 A.D.2d 543, 549 N.Y.S.2d 50 (2d Dep't 1989) (plaintiff's right to payment conditioned upon approval of its requisition by the defendant's engineers). Absent this statutory or contractual requirement, the rule is that the cause of action accrues when the right to payment exists regardless of demand. *Grace Indus., Inc. v. New York City Dep't of Transp.*, 22 A.D.3d 262, 263, 802 N.Y.S.2d 409 (1st Dep't 2005) (action accrued upon plaintiff's right to payment because "Comptroller's audit was not a condition precedent to payment under the

contract"); *Phillips Constr. Co. v. City of New York*, 61 N.Y.2d 949, 463 N.E.2d 585, 475 (1984)

(cause of action accrues "on completion of the actual physical work").

Plaintiffs cite a single case, *Verizon New York v. Sprint PCS*, 43 A.D.3d 686, 841

N.Y.S.2d 529 (1st Dep't 2007), in which a court departed from the well-settled rule and held,

with little analysis, that a plaintiff's contract claim accrued upon demand for payment by the

plaintiff and rejection by the defendant.  This case, however, involved a claim for payment under

a service contract, and the court specifically distinguished it from claims for contractual

damages, such as plaintiffs' claims here.  *Verizon New York*, 43 A.D.3d at 687, 841 N.Y.S.2d at

529.  Moreover, as the dissent persuasively demonstrated, the majority opinion runs afoul of

numerous New York authorities, including *Kassner*, holding that in the absence of a condition

precedent to payment, a cause of action for payment under a service contract accrues on

completion of the actual physical work.

### F.    In Any Event, Plaintiffs Cannot Revive Or Extend The Statute Of Limitations By Making Repeated Demands For Payment.

Even if plaintiffs' claims had accrued only when plaintiffs made a demand for payment,

they could not revive or extend the limitations period by making repeated, redundant demands.

*Joseph Gaier P.C. v. Iveli*, 287 A.D.2d 375, 731 N.Y.S.2d 692 (1st Dep't 2001) (plaintiff could

not extend the statute of limitations by making repeated demands for payment).  Plaintiffs' May

18, 2007 demand was hardly their first, as plaintiffs themselves noted.  Jacob Dec. ¶ 16, Ex. O

(plaintiffs' Sept. 21 Notice of Claim with May 18 letter attached).  Moreover, Con Ed had

previously invoiced the Port Authority for its same expenses in rebuilding the Substation, for

example on June 14, 2005, demanding payment within the month "for the replacement cost of

substation structure at the site of the former 7 World Trade Center."  Cho Dec. ¶ 4, Ex. C (Con

Ed invoice).[6] Thus, even under plaintiffs' theory that a demand and rejection was necessary for accrual, their claims would have accrued and expired long before plaintiffs filed their Fifth Complaint.

Plaintiffs' suggestion that their negotiations with the Port Authority prevented their claims from accruing (Plaintiffs Mem. 16-17) is likewise inconsistent with New York law. *JCH Delta Contracting, Inc. v. City of New York*, 44 A.D.3d 403, 843 N.Y.S.2d 245 (1st Dep't 2007) (parties' negotiations did not delay accrual of plaintiff's claims, since there was "no evidence that defendant intended to relinquish its right to pursue the [statute of limitations] defense").

### G.     Certainty Regarding The Amount Of Plaintiffs' Damages Is Not Required For Its Contract Claims To Accrue.

Plaintiffs also wrongly suggest that their contract claims could not accrue until the total amounts expended by Con Ed were final and certain. Plaintiffs Mem. 15-17. Again, this position is flatly contradicted by New York law and has been repeatedly rejected by courts in this District. As the New York Court of Appeals has held, because nominal damages are always available for breach of contract, a contract claim accrues regardless of the presence of actual, quantifiable damages. *Ely-Cruikshank Co., Inc. v. Bank of Montreal*, 81 N.Y.2d 399, 402, 599 N.Y.S.2d 501, 502-03 (1993). "A breach of contract case, therefore, is ripe immediately upon a breach, even where damages remain uncertain." *Argonaut Partnership, L.P. v. Bankers Trustee Co. Ltd.*, 1997 WL 45521 (S.D.N.Y. Feb. 4, 1997) (holding that since New York law provides for nominal damages in contract actions, plaintiff's contract action accrued when defendants failed to follow the terms of an indenture agreement covering the terms of a debt offering and not when actual default on the related debt offering occurred). *See Phillips Construction Co.*, 61 N.Y.2d 949, 951, 463 N.Y.S.2d 585 (1984) (fact that amounts due under the contract had not

---

[6] As set forth above, such invoices were referenced in plaintiffs' May 18, 2007, demand letter and may be considered by this Court on a motion to dismiss.

been finally determined did not prevent the statute of limitations from beginning to run); *LNC Investments, Inc. v. First Fidelity Bank*, 1994 WL 73648, at *5 (S.D.N.Y. Mar. 3, 1994) ("New York law clearly provides that since nominal damages are always available in breach of contract actions, all of the elements necessary to maintain a lawsuit and obtain relief in court are present at the time of the alleged breach. . . . [T]he uncertainty of the damages requested by plaintiffs does not preclude plaintiffs from bringing this action.); *Camotex, S.R.L. v. Hunt*, 741 F.Supp. 1086, 1090 (S.D.N.Y. 1990) (rejecting plaintiff's contention that its cause of action did not accrue until its damages were ascertainable, and holding that "uncertainty as to the extent of damages does not alone prevent accrual of a cause of action and the subsequent running of the statute of limitations" (internal citations omitted)).  The single case cited by plaintiffs in support of their argument that damages must be quantifiable and certain for a claim to accrue, *In re Continental Ins. Co. v. Richt*, 253 A.D.2d 818, 677 N.Y.S.2d 634 (2d Dep't 1998), holds nothing of the kind.  In *Continental*, the court merely enforced an explicit provision in an underinsured motorist statute requiring the insured to exhaust its remedies against the underinsured motorist before proceeding under the policy.

*    *    *

Plaintiffs' failure to assert their new contract theories of recovery for the same damages pleaded in their first three complaints within one year of their accrual on September 11, 2001, deprives this Court of subject matter jurisdiction over them.

**POINT II**

**PLAINTIFFS' FIFTH COMPLAINT VIOLATES<br>THE RULE AGAINST CLAIM SPLITTING.**

Plaintiffs' contention that the claims in their Fifth Complaint are unrelated to those of their Initial Complaint or Amended Complaint and therefore can be asserted in a new lawsuit

(Plaintiffs Mem. 22-23) is clearly wrong.  Both actions indisputably arise out of the destruction

of Con Ed's Substation and seek recovery for the same damages.  *See* Port Authority Mem. 17-

18; *compare, e.g.*, Jacob Dec. ¶ 5, Ex. D ¶ 35 9 (plaintiffs' Amended Complaint) (detailed,

enumerated allegations regarding the Port Authority's alleged negligent acts or omissions

leading to the collapse of WTC7) *with* Jacob Dec. ¶ 2, Ex. A ¶¶ 47-48 (plaintiffs' Fifth

Complaint) (enumerating similar alleged negligent acts or omissions).  The only difference is

plaintiffs' legal theory of recovery.  However, "[i]t is well established, under the doctrine of

claim splitting, that a party . . . must bring in one action all legal theories arising out of the same

transaction or series of transactions." *Am. Stock Exchange, LLC v. Mopex, Inc.*, 215 F.R.D. 87,

91 (S.D.N.Y. 2002) (internal quotation marks and citations omitted).

Plaintiffs agree that the test in this Circuit is whether they could have asserted their new

contract claims in their original complaint – if so, they may not split such claims in successive

actions.  Plaintiffs Mem. 21; *Curtis v. Citibank, N.A.*, 226 F.3d 133, 140 (2d Cir. 2000) (plaintiff

properly was barred from filing a new lawsuit asserting claims that could have been asserted in

plaintiff's original complaint); Port Authority Mem. 16-18 and cases cited therein.  Plaintiffs'

arguments that their contract causes of action had not yet accrued, and therefore could not have

been pleaded, have been disproven above.[7]

---

[7] Plaintiffs cite several more inapposite third-party indemnification cases in which the first and
only loss suffered by the party seeking indemnification was liability for another's injury.  *See McDermott*,
50 N.Y.2d 211, 406 N.E.2d 460 (defendant was held liable for its employee's injuries arising from
malfunction of a truck, then sought indemnification from the truck manufacturer); *Sprague v. Marshall*,
15 A.D.3d 853, 789 N.Y.S.2d 570 (4th Dep't 2005) (defendant, sued for fire damages originating on his
property, sought indemnification from contractor that caused the fire); *Irwin G. Cantor v. Swanke Hayden
Connell & Partners*, 186 A.D.2d 71, 588 N.Y.S.2d 19 (1st Dep't 1992) (defendant architect held liable
for delays in designing the foundation of a new building, then sought indemnification from the structural
engineer).  As set forth above, the rule in two-party cases such as this, in which the plaintiff seeks
reimbursement or indemnification for expenses arising out of its own property damage, is that such claims
accrue as of the date of the property damage.

Plaintiffs cannot circumvent the Court's denial of their earlier motion to supplement by simply filing a new complaint.[8]  *See* Port Authority Mem. 15-16.  Their Fifth Complaint should be dismissed for improper claim splitting.

## POINT III

## PLAINTIFFS ARE ESTOPPED FROM TAKING A POSITION CONTRARY TO ONE TAKEN PREVIOUSLY BEFORE THIS COURT.

Plaintiffs are barred by estoppel against inconsistent pleadings (or judicial estoppel) from commencing a new action based on a Lease interpretation that is totally at odds with the Lease interpretation they advanced earlier in order to avoid dismissal of a related lawsuit.  *See* Port Authority Mem. 18-22.

### A.    Plaintiffs' Statements In Opposition To Citigroup's Motion To Dismiss Are Plainly Inconsistent With The Allegations In Their Fifth Complaint.

Plaintiffs' arguments in opposition to Citigroup's motion to dismiss are irreconcilably inconsistent with the causes of action they now assert in their Fifth Complaint.  Yet surprisingly, plaintiffs claim that "nothing about" their prior arguments in opposition to Citigroup's motion to dismiss can be construed as contradicting the arguments that they make now.  Plaintiffs Mem. 25-27.  But plaintiffs' inconsistencies are plain.  Their Fifth Complaint alleges that Section 16 of the Lease "obligat[es] the Port Authority to indemnify Con Edison for damage arising from the Port Authority's acts or omissions in connection with the construction or maintenance of the Building, regardless of fault on the part of the Port Authority" and seeks contractual payments under the Lease for Con Ed's damages arising from the destruction of the Substation on September 11.  Jacob. Dec. ¶ 2, Ex. A, ¶¶ 31, 38-39, 45, 50, 56 (plaintiffs' Fifth Complaint).

---

[8] Plaintiffs fail to address the Port Authority's Rule 15 argument.  Defendant did not simply argue that plaintiffs were required to move or amend under Rule 15; plaintiffs already had moved to amend or supplement to add these claims and their motion was denied.  The Port Authority's argument that plaintiffs should not be permitted to avoid the denial of their motion by filing a new complaint is unanswered by plaintiffs.

This insupportably broad interpretation of Section 16 is diametrically opposed to the position plaintiffs took in opposing Citigroup's motion to dismiss, in which they vigorously asserted that Section 16 was limited to the period of active construction and rejected any interpretation of Section 16 that would make the Port Authority an indemnitor regardless of fault or liable for damages occurring decades after the building was built.  Jacob Dec. ¶ 17, Ex. F at 11-12 (plaintiffs' opposition brief to Citigroup's motion to dismiss).  *See also* Port Authority Mem. 8-11, 18-19.

Plaintiffs' recognition of their palpable inconsistencies is reflected in their repeated apologies and excuses.  Plaintiffs explain, for example, that they were "unprepared" when, responding to a question from the Court, they stated that Section 16 talks about "what happens during the actual construction of that tower, not with respect to the results of defects in construction."  (Sachs Dec. ¶ 3, Ex. 2 at 6:18-20) (Feb. 16, 2006 Court conference).  In their related memorandum in support of their Motion to Amend, plaintiffs speculate that the statement made in their memorandum in opposition to Citigroup's motion to dismiss that Section 16 required a showing of wrongful conduct on the part of the Port Authority may have been a "mistake."  Plaintiffs 4/1/08 Memorandum in Support of Motion to File an Amended and Supplemental Complaint 9 n. 4.  They protest, when confronted with their prior interpretation of the Lease, that "Port Authority cannot seriously argue that a party may not assert alternative arguments."  Plaintiffs 9/18/07 reply memorandum in support of motion to supplement.  And they reject as unduly limited their interpretation in their memorandum in opposition to Citigroup's motion to dismiss that Section 16 applies only to construction and maintenance of WTC and 'not any premises defect case which might arise 20 years later.'" (Plaintiffs Mem. 27).

**B.    This Court Sufficiently "Adopted" Plaintiffs' Prior Inconsistent Assertions In Denying Citigroup's Motion To Dismiss As Premature.**

In order for judicial estoppel to apply, the Court need only adopt a party's prior inconsistent position "in some manner." *Mitchell v. Washingtonville Cent. School Dist.*, 190 F. 3d 1, 6 (2d Cir. 1999). Plaintiffs argue that this Court did not adopt Con Ed's prior position because it made no definitive ruling that Con Ed's interpretation of Section 16 was correct. Plaintiffs Mem. 27. But that is not the law, and plaintiffs fail to address the authorities cited by the Port Authority as to what "adoption" "in some manner" by the Court means. *See* Port Authority Mem. 21-22.

As demonstrated in the body of case law cited by the Port Authority, courts presume that when a plaintiff obtains a favorable ruling in a prior lawsuit and the plaintiff made inconsistent arguments in requesting such ruling, the requirement of "adoption" by the previous court is satisfied. There is no requirement that the court have explicitly accepted or agreed with the inconsistent argument. A definitive ruling on the merits is not required. Rather, any favorable ruling, including preliminary dispositions of motions, can result in an estoppel. *See* Port Authority Mem. 21-22 and cases cited therein. The Court's denial of Citigroup's motion to dismiss because plaintiffs asserted an inconsistent interpretation of Section 16 of the Con Ed Lease that raised factual issues clearly meets this standard.

Plaintiffs' contention, without benefit of any supporting authority, that the Port Authority must show prejudice from plaintiffs' change of position (Plaintiffs Mem. 29) has been firmly rejected by the courts of this District. As set forth in the Port Authority's moving papers (Port Authority Mem. 20 n.7), it is irrelevant whether the party seeking estoppel has suffered prejudice. *A.I. Trade Fin., Inc. v. Centro Internationale Handelsbank AG*, 926 F.Supp. 387, 389 (S.D.N.Y. 1996). The doctrine exists to protect the integrity of the judicial process, not to avoid

unfairness to the litigants. *United States v. West Prods., Ltd.*, 168 F.Supp.2d 84, 90 n.7 (S.D.N.Y. 2001).

Finally, Plaintiffs' defense that estoppel should not apply because plaintiffs were only inconsistent once, rather than multiple times, is barely deserving of a response.[9] The question is not how many times plaintiffs made inconsistent assertions, it is rather that when they did, they did so intentionally and strategically, they obtained their desired result, and they now wish to retract them because they have become inconvenient. Judicial estoppel exists precisely to prevent parties from "playing fast and loose" like this with the court system.

**C.    Plaintiffs' Statements Regarding Interpretation Of The Lease Qualify As Statements Subject To Judicial Estoppel.**

Contrary to plaintiffs' position (Plaintiffs Mem. 28), it is well-settled that judicial estoppel can apply to inconsistent legal positions, particularly where, as here, such positions are based on facts particular to the case. *E.g.*, *Kubin v. Miller*, 801 F.Supp. 1101, 1111 (S.D.N.Y. 1992) (plaintiff who claimed to be a New York domiciliary in a prior action to invoke the court's diversity jurisdiction was estopped from claiming that he was a Connecticut domiciliary in a later action); *Helfand v. Gerson*, 105 F.3d 530, 535 (9th Cir. 1997) ("The greater weight of federal authority, however, supports the position that judicial estoppel applies to a party's stated position, regardless of whether it is an expression of intention, a statement of fact, or a legal assertion."); *In re Cassidy*, 892 F.2d 637, 641 (7th Cir. 1990) ("It has been said that judicial estoppel applies only to positions on questions of fact. We disagree.") (internal citations omitted); *AFN, Inc. v. Schlott, Inc.*, 798 F.Supp. 219, 224 (D.N.J. 1992) ("The doctrine applies to assertions of both factual and legal positions."); *Humetrix, Inc. v. Gemplus S.C.A.*, 268 F.3d 910 (9th Cir. 2001) (party that earlier argued that it was not a party to a contract was judicially

---

[9] In fact, plaintiffs advanced their interpretation of Section 16 twice: once in opposing Citigroup's motion to dismiss and subsequently in a conference before this Court.

estopped from later arguing that it was a party by agency); *Warda v. Commissioner of Internal Revenue*, 15 F.3d 533, 538-39 (6th Cir. 1994) (party who had successfully argued to a probate court that title in real estate had passed to her was judicially estopped from arguing subsequently to a tax court to avoid payment of gift tax, that title had instead passed to her son); *Allen v. Zurich Ins. Co.*, 667 F.2d 1162, 1167 (4th Cir. 1982) (party estopped from "assert[ing] a legal position respecting his employment relationship with another that is completely at odds with the position" asserted in a prior litigation).[10]

In any event, plaintiffs have treated the interpretation of Section 16 as ambiguous and "factual" when it served their interests to do so, and should not now be allowed to obtain immunity from estoppel based on their present argument that its interpretation is unambiguous and "legal." Moreover, the Court has implicitly found, at least provisionally, that the proper interpretation of Section 16 may depend on extrinsic factual evidence, since it deferred resolution of the meaning of that section pending development in discovery. *In re September 11 Property Damage and Business Loss Litig.*, 468 F.Supp.2d 508 (S.D.N.Y. 2006).[11]

---

[10] Indeed, certain courts have held that judicial estoppel applies even to pure assertions of abstract law. *Lydon v. Boston Sand & Gravel Co.*, 175 F.3d 6, 13 (1st Cir. 1999) (party that had successfully avoided arbitration by arguing that its adversary's exclusive remedy was under state law could not in a subsequent litigation argue that the adversary's state law remedy was preempted by federal law); *Jett v. Zink*, 474 F.2d 149, 154-55 (5th Cir. 1973) (party estopped from asserting that court's jurisdiction was *quasi in rem* when it had earlier argued successfully, for different strategic purposes, that the court's jurisdiction was *in personam*).

[11] The Port Authority believes that Sections 8 and 16 of the Lease are clear and unambiguous, and that plaintiffs were correct to urge in opposition to Citigroup's motion to dismiss that any liability under those sections can arise only 'in connection with the construction or maintenance" of the building, not from the collapse of the building 20 years later. However, plaintiffs cannot be allowed to avoid the consequences of their inconsistent statements by claiming immunity from estoppel on the ground that there is only one, plain, unambiguous interpretation of such sections.

## POINT IV

### THE FIFTH COMPLAINT MUST BE
### <u>DISMISSED FOR LACK OF SPECIFICITY.</u>

Plaintiffs' Fifth Complaint does not meaningfully identify any particular act or omission or any negligence by the Port Authority that caused the destruction of the Substation. Instead, the Fifth Complaint contains only an amalgam of every conceivable aspect of building design, construction, maintenance, and operations, none of which serves to notify the Port Authority of what particular aspect of the building's design or construction was allegedly faulty or what in the maintenance or operations of the building could have contributed to its collapse.

Plaintiffs protest that discovery thus far – consisting of over 800,000 pages of documents and over twenty depositions – has yielded no information usable to plaintiffs in formulating their Fifth Complaint. But there certainly has been sufficient discovery for plaintiffs to develop detailed, working theories regarding how the design of WTC7, any alleged structural defects, or any faulty maintenance or operations may have contributed to the building's collapse. If not, plaintiffs could not in good faith continue to maintain that there is negligence liability under their original Complaint.

Plaintiffs have asserted inconsistent theories regarding the cause of the collapse. For example, in their memorandum opposing the Port Authority's motion to dismiss, plaintiffs assert that, *inter alia*, a fuel-fed fire caused the building's columns to collapse (Plaintiffs Mem. 31) while in their opposition to Silverstein's motion to dismiss, they claim that the building collapsed as a result of an unrelated but unidentified design flaw. See Cho Dec. ¶ 7, Ex. D at 9-10. The Port Authority is not being disingenuous. It truly does not yet know whether it is defending against a claim of a defective fuel system that compromised a near-by column or truss, or an as-yet-unidentified flaw in the building design (such as placement of columns) or something else.

Given all the proceedings to date, plaintiffs should not be permitted to submit pleadings with meaninglessly vague, general allegations that serve only to keep the Port Authority in the dark regarding the actual claims against it.  5 Alan Wright & Arthur Miller, *Federal Practice and Procedure* § 1215 (2007); *McKinnon v. Patterson*, 568 F.2d 930, 934 (2d Cir. 1977) (dismissing Section 1983 claims on grounds that allegations were too general to withstand a motion to dismiss)[12].

## CONCLUSION

The Port Authority respectfully requests that this Court dismiss the Complaint filed by plaintiffs on November 26, 2007, together with such other and further relief as to this Court seems just and proper.

Dated: New York, New York
        May 9, 2008

Respectfully submitted,

SCHIFF HARDIN LLP

By: *Donald A. Klein*

Beth D. Jacob (BJ6415)
Donald A. Klein (DK7821)
Jeanne Cho (JC4631)
900 Third Avenue
New York, N.Y.  10022
212-753-5000

*Attorneys for Defendant The Port Authority of New York and New Jersey*

NY\50313845.7

---

[12] As set forth in the Port Authority's opening brief, a complaint must be dismissed if it is "too general" such that "it will not provide the defendant fair notice regarding the nature of plaintiff's claim and the grounds upon which it rests." *Gillespie v. Ancona*, 1999 WL 66538, *2 (D.Conn. 1999). Plaintiffs make much of the fact that a case cited in *Gillespie* and by the *Port Authority, Boston & Maine Corp. v. Town of Hampton*, 987 F.2d 855 (1st Cir. 1993), was overruled on another ground.  Plaintiffs Mem. 32.  That ground – that a heightened pleading standard applies to civil rights cases under 42 U.S.C. 1983 – is irrelevant here, and indeed, was not the point for which *Boston* was cited in *Gillespie*.