USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 6/26/08

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

IN RE SEPTEMBER 11 PROPERTY DAMAGE AND BUSINESS LOSS LITIGATION — 21 MC 101 (AKH)

CONSOLIDATED EDISON COMPANY OF NEW YORK, INC., and; AEGIS INSURANCE SERVICES, INC., LIBERTY INSURANCE UNDERWRITERS, INC., NATIONAL UNION INSURANCE COMPANY OF PITTSBURGH, NUCLEAR ELECTRIC INSURANCE LIMITED and UNDERWRITERS AT LLOYDS as subrogees of CONSOLIDATED EDISON COMPANY OF NEW YORK, INC.,

Plaintiffs,

-against-

THE PORT AUTHORITY OF NEW YORK AND NEW JERSEY,

Defendant.

02 Civ. 7188 (AKH)
07 Civ. 10582 (AKH)

**OPINION AND ORDER DISMISSING COMPLAINT AND GRANTING LEAVE TO AMEND EARLIER COMPLAINT**

ALVIN K. HELLERSTEIN, U.S.D.J.:

The Port Authority of New York and New Jersey ("Port Authority"), established in 1921 by interstate compact, enjoys the sovereign's immunity to suit. Howell v. Port of New York Authority, 34 F. Supp. 797, 801 (D.N.J. 1940). The New York statute that modifies sovereign immunity and allows the Port Authority to be sued requires that a notice of claim be served upon the Port Authority at least 60 days prior to filing suit, and that the lawsuit be filed within one year of the accrual of the cause of action. N.Y. Unconsol. Laws §§ 7101, 7107, 7108. The requirements are jurisdictional and non-waivable. Mulligan v. The Port Authority of New York and New Jersey, No. 02 Civ. 6885, 2002 WL 31233245, at *1 (S.D.N.Y. Oct. 4, 2002);

Giannone v. Port Authority of New York and New Jersey, 511 N.Y.S.2d 940, 941 (N.Y. App. Div. 1987).

Consolidated Edison Company of New York, Inc. ("Con Ed") gave such notice on June 11, 2002, notifying the Port Authority of its claim that the Port Authority's negligence in designing, constructing, maintaining and operating of the diesel fuel tanks located in the building at Seven World Trade Center proximately caused the destruction of the Con Ed substation beneath Seven World Trade Center on September 11, 2001.

The notice to the Port Authority of Con Ed's claim and the ensuing lawsuit that was filed, although sounding in negligence, placed that negligence in the context of the Port Authority's contractual duty to Con Ed, pursuant to their contract of May 29, 1968. As the issues of that lawsuit developed, Con Ed became concerned that its notice and its lawsuit were set too narrowly, and that its claims under particular provisions of the contract ultimately might be held not encompassed by its notice. It tried to file a supplemental claim, but I did not allow it. It also filed a new and separate complaint, filed November 26, 2007, with a new index number, 07 Civil 10582.

The Port Authority moves to dismiss. It argues that the one-year statute of limitations has run, that the new lawsuit would split the original and still-pending lawsuit, and that Con Ed's arguments to avoid those bars are without merit. Con Ed also moves for leave to amend and supplement its original complaint, if the Port Authority's motion is granted.

I grant the Port Authority's motion to dismiss. I also grant Con Ed's motion to amend its original complaint, but deny its motion to supplement that complaint.

## Factual Background

The Con Ed substation was constructed in 1970, on land leased to Con Ed by the Port Authority under the 1968 lease. By that lease, Con Ed agreed to supply, and the Port Authority agreed to buy, the electric power that enabled the World Trade Center towers to be erected and its tenants to flourish. That state of affairs continued until September 11, 2001, when the terrorists flew two hijacked jumbo-jets into Towers One and Two of the World Trade Center, causing more than 2,700 deaths, the destruction of the World Trade Center Complex, and substantial injury to the fabric of American society. The intense and unquenched fires that caused Towers One and Two to collapse, set fire to the 47-story Tower Seven as well and caused it also collapse. I described that destruction, from intense and unquenched fires caused by flaming debris falling from Towers One and Two, in previous decisions brought by Con Ed's insurers. See In re Sept. 11 Prop. Damage and Bus. Loss Litig. (Aegis Ins. Servs., Inc. v. Seven World Trade Center Co., L.P.), 481 F. Supp. 2d 253, 255 (S.D.N.Y. 2007); In re Sept. 11 Prop. Damage and Bus. Loss Litig. (Aegis Ins. Servs., Inc. v. Seven World Trade Center Co., L.P.), 468 F. Supp. 2d 508, 511-13 (S.D.N.Y. 2006).

## Prior and Related Proceedings

The lawsuits that arose from the destruction of Seven World Center are but one of several categories of suits filed in the aftermath of 9/11.[1] The first of the Tower Seven lawsuits

---

[1] The majority of September 11-related lawsuits, which number in the tens of thousands, have been consolidated under four master case numbers and are arranged by subject matter: (1) 21 MC 101, encompassing wrongful death, personal injury and property damage lawsuits occurring as a result of the terrorist attacks; (2) 21 MC 100, encompassing personal injury lawsuits filed by workers engaged in the search, rescue and clean-up effort at the World Trade Center site in the weeks and months following September 11, 2001; (3) 21 MC 102, encompassing personal injury lawsuits filed by search, rescue and clean-up workers in areas outside the World Trade Center site; and (4) 21 MC 103, encompassing personal injury lawsuits filed by search, rescue and clean-up workers who worked both within and without the World Trade Center site. In addition,

were filed by two insurers: Aegis Insurance Services, Inc., suing as subrogated insurer for losses reimbursed to Con Ed, and Industrial Risk Insurers, suing as subrogated insurer for losses reimbursed to Silverstein Properties Inc., as long-term lessee of Seven World Trade Center from the Port Authority, and lessor to the City of New York and to Citigroup Inc. and Citigroup Global Market Holdings Inc. (collectively, "Citigroup"). I described and regulated material aspects of those claims in previous decisions. See IRI v. The Port Auth. of New York and New Jersey, 387 F. Supp. 2d 299 (S.D.N.Y. 2005) (granting Citigroup's motion to dismiss negligence claims against it due to provisions in the lease and on assumption of the risk grounds); Aegis Ins. Servs., Inc. v. The Port Auth. of New York and New Jersey, 468 F.Supp.2d 508 (S.D.N.Y. 2006) (granting motions to dismiss made by the City of New York and various design and construction defendants, but denying motions to dismiss made by the Port Authority and the Citigroup defendants); Aegis Ins. Servs., Inc. v. The Port Auth. of New York and New Jersey, 481 F. Supp. 2d 253 (S.D.N.Y. 2007) (granting motions of third party defendants, contractors employed by the City, to dismiss the claims against them).

**The Prior Proceedings Relating to ConEd and Aegis, Its Insurer**

Aegis filed a Notice of Claim against the Port Authority on April 15, 2002. On June 11, 2002, Aegis filed a second Notice of Claim adding Con Ed as a claimant, but otherwise identical to the April Notice of Claim. Aegis alleged that the Port Authority had negligently designed, constructed, maintained and operated 7 WTC, breaching the lease between the Port Authority and Con Ed, and thereby causing extensive damage and destruction to the Con Ed

---

there are disputes against, and among, the insurers of various of the parties allegedly responsible for damages suffered by various of the parties to the lawsuit. Under the Air Transportation Safety and System Stabilization Act (ATSSSA), passed by Congress in the weeks after the terrorist attacks, the Southern District of New York has exclusive jurisdiction over all of this litigation. I preside over all of these suits.

substation and its machinery and equipment. The claim was said to accrue September 11, 2001. The Notice of Claim was followed in proper time, on September 10, 2002, with a lawsuit, 02 Civ. 7188, making these same allegations. The claims were alleged to sound in tort, and the tort was alleged as a breach of the contract of lease. The Port Authority's Answer, filed December 14, 2004, alleged that plaintiffs' claims were barred by the provisions of that Lease.

Defendants moved to dismiss the contract claim, arguing that the Notice of Claim did not give adequate notice of that claim and that the defect was jurisdictional. I denied the motion, ruling that the breach of contract was the context for the claims of negligence, and that the negligent performance of the Port Authority's contract obligations was what was actionable. Order, December 12, 2002, incorporating extemporaneous rulings at argument held November 30, 2004.

Discovery proceedings followed. Twenty depositions have been taken. The parties seem to be ready to file motions for substantive resolutions of the issues raised by the lawsuits.

In August 2007, before pre-trial discovery closed, plaintiffs moved for leave to file a supplemental complaint. Plaintiffs sought to allege that the Port Authority had an obligation to repay Con Ed for damages to its substation because of the Port Authority's acts or omissions in connection with the construction or maintenance of 7WTC, regardless of fault. The claim pleaded into clause 16 of the lease between the Port Authority and Con Ed (set out later in this opinion). There had been no new Notice of Claim filed with the Port Authority. I denied leave to supplement, ruling that all of plaintiffs' claims accrued on September 11, 2001, and that there either was no need to supplement or, if the plaintiffs' regarded the claim they wished to add as something "new," that it was too late, and would create too much complication to add a new

claim to that which existed and which already had been much litigated and discovered. See Order, September 21, 2007.

At around the same time, plaintiffs filed a separate lawsuit, 07 Civ. 7969, basing it on the original notice of claim of June 11, 2002, and alleging similar claims of tort and contract as in the proposed supplemental complaint. When defendants moved to dismiss the new complaint because more than one year had elapsed since the Notice of Claim, NY Unconsol. Laws, § 7107, plaintiffs voluntarily withdrew their complaint.

The next day, September 21, 2007, plaintiffs filed a new Notice of Claim, alleging that Con Ed's claim arose June 7, 2007 when the Port Authority rejected its demand for reimbursement under the lease. Con Ed made this demand for reimbursement on May 18, 2007, and referred to prior demands going back to February 2006. The present lawsuit followed, on November 26, 2007. As in previous complaints, plaintiffs allege that the Port Authority's acts and omissions, with and without negligence, constituted the proximate cause of the destruction of the Con Ed substation, and its machinery and equipment.

**The 1968 Lease, Its Relevant Clauses, and the Port Authority's Twenty-Million Dollar Reimbursement**

The May 29, 1968 lease between the Port Authority and Con Ed provided for the construction of an electric power substation by which Con Ed would transmit the power to operate the towers of the World Trade Center that the Port Authority planned to erect. The substation was sited beneath what would become Tower Seven. The Port Authority was authorized to use portions of Con Ed's premises for purposes of construction, without "any abatement of rent nor any claim or demand for damages, consequential or otherwise". Lease, § 8(b).

Two relevant clauses of the lease, clauses 8 and 16 and, dealt with these features: the erection of a tower above the Con Ed substation; the right of the Port Authority to do so and to use the Con Ed property for that purpose; and the consequences if the Port Authority's uses were to cause damage to the Con Ed substation. Section 8 of the lease recognizes the right of the Port Authority to construct any structure in the air space above the substation building. The Port Authority agreed in Section 8 that any construction in the air space would not unreasonably impair, endanger or interfere with Con Ed's use of the substation. Section 16 provides that the Port Authority will reimburse Con Ed for any maintenance, repair, replacement, or rebuilding expense caused by any damage to the substation as a result of the Port Authority's actions in connection with the construction or maintenance of any structure in the air space above the substation. The clauses are set out in full below.

> Section 8. Air Space and Port Authority Construction
>
> (a) The Lessee recognizes that the Port Authority may construct wholly or partially on, above or about the Substation Building additional stories, structures, buildings or improvements of whatsoever design, size and purpose as the Port Authority may from time to time and at any time during the letting determine. In connection therewith the Port Authority may use the roof surface of the Substation Building for the base or floor of such additional construction or for a plaza thereof or for some other purpose and may also use side wall surfaces of the Substation Building for support or for attachment thereto of additional structures or for decorative treatment thereto. The Port Authority agrees that no such additional construction shall unreasonably impair, endanger or interfere with the continuous use of the Substation Building by the Lessee contemplated in Section 3 hereof. Without limiting the generality of the foregoing or any other provisions of this Agreement the Port Authority in performing such additional construction may, upon reasonable advance written notice given to the Lessee and subject to and in accordance with the reasonable safety and operating requirements of the Lessee, temporarily use portions of the Substation Building and may enter upon, over, under or through the Lessee's premises from time to time in order to perform such construction and the Lessee hereby consents to such entry, use and construction by the Port Authority.
>
> (b) The exercise or any or all of the foregoing rights by the Port Authority or its authorized contractors or agents shall not be or be construed to be an eviction of the Lessee nor be made the grounds of any abatement of rental nor any claim or demand for damages, consequential or otherwise.

*****

Section 16. Responsibility for Other Uses of the Premises

Anything in this Agreement to the contrary notwithstanding it is expressly understood and agreed that the obligations assumed by the Lessee under this Agreement with respect to maintenance, repair, rebuilding, restoration or indemnity shall not extend to causes or conditions arising out of the use or occupancy of the premises or space above or about the premises or of the space above or about the premises by the Port Authority, its employees, agents or contractors; further the responsibility of the Lessee for the maintenance, repair or rebuilding of the Substation Building shall not include any other structure or buildings erected by others than the Lessee unless repair or reconstruction thereof is necessitated by act or fault of the Lessee. The Port Authority shall reimburse the Lessee for any expense incurred by the Lessee in maintaining, repairing, replacing or rebuilding the Substation Building or the Lessee's Substation Equipment where such expenses are incurred by reason of damage to the Substation employees in connection with the construction or maintenance of the stories, structures, buildings or improvements described in Section 8 hereof. The responsibility of the Lessee for major repairs or rebuilding shall not extend to the portion of the foundations, bearing columns, roof reinforcement and other structural members and facilities incorporated in the Substation Building for the support or accommodation of the stories, structures, buildings or improvements described in Section 8 hereof unless the Port Authority shall reimburse the Lessee for the expense thereof to the extent that such expense is not covered by insurance.

Sections 17 and 18 deal with insurance and the allocation of responsibility between Con Ed and the Port Authority in the event of damage to the substation. Section 17 of the Lease requires that Port Authority obtain fire insurance for 100 percent of replacement value of the Substation Building at Con Ed's expense. Section 18 provides that it is the responsibility of Con Ed to (1) clear debris from damage to the premises resulting from fire, the elements, the public enemy or other casualty; and (2) repair minor damage caused by fire, the elements, the public enemy or other casualty in accordance with the plans and specifications as they existed prior to the damage should damage occur to the premises rendering the premises untenantable or unusable for a period of ninety days or less. In the event of major damage (damage causing the premises to be untenantable or unusable for more than ninety days) or destruction of the

premises by fire, the elements, the public enemy or other casualty, it is Con Ed's responsibility to rebuild or replace the substation as it existed prior to the destruction or, with the approval of the Port Authority, to some different structure. Section 18 also provides that, should Con Ed elect not to rebuild the substation in the event of destruction or major damage, it had to provide 60 days notice to the Port Authority to that effect. Such notice would result in the termination of the lease at the end of the 60 day period. In each of these situations—clearing of debris, repairing minor damage, or rebuilding after major damage—the proceeds of insurance are to be made available to Con Ed if the destruction or damage was covered by insurance. Sections 17 and 18 read, in full:

Section 17. Fire Insurance.

(a) During the term of this Agreement the Port Authority, at the Lessee's expense, shall insure and keep insured the Substation Building to the extent of 100% of the replacement value thereof against such hazards or risks as may not or in the future be included under the standard form of fire insurance policy in use in New York from time to time during the letting and the standard form of extended coverage endorsement prescribed as of the effective date of such insurance by the rating organization having jurisdiction. All such policies of insurance and renewals thereof shall be taken out in the name of the Port Authority and shall provide that the loss, if any, shall be adjusted with and payable to the Port Authority. The proceeds of such insurance shall be applied by the Port Authority in accordance with the provisions of Section 18 hereof. The Port Authority shall not be deemed to have warranted the solvency of any insurance company and shall not be liable for any losses resulting from such insolvency.

On June 3, 2004, and without reference to any particular clause, but apparently pursuant to paragraphs 17 and 18 of the Lease, the Port Authority remitted $20 million to Con

Ed, which it represented was an advance paid by the insurance carrier and constituted partial payment for the costs of rebuilding the substation. It is not clear from the parties' submissions the amount of the balance, nor when, and for what reasons, the balance is to be paid.

**ConEd's Original Notice of Claim and Original Lawsuit**

On April 15, 2002, Aegis filed a notice of claim against the Port Authority alleging negligence and carelessness of the Port Authority in connection with the design, installation, maintenance and operation of the diesel fuel tanks at 7WTC:

> This is a claim for property damage as a result of the negligence and carelessness of the Port Authority of New York and New Jersey which consisted of the following: among other things: the negligent design, approval, inspection, installation, maintenance, operation, conduct and control of the diesel fuel tanks at 7 World Trade Center, New York, New York; approving and allowing aforesaid fuel tanks to be built and located so as to contribute to the collapse of 7 World Trade Center; failing to build and maintain the aforesaid diesel fuel tanks under proper, reasonable and lawful control; causing, permitting, allowing and/or suffering the aforesaid diesel fuel tanks to be so negligently constructed, located, installed, operated or maintained so as to cause and permit to contribute to the collapse of 7 World Trade Center, New York, New York, and seriously damaging claimants' insured's property; failing to keep and maintain a proper lookout and watch; failing to properly and timely prevent the aforesaid diesel fuel tanks from contributing to the collapse of 7 World Trade Center; failing to use and/or enforce accepted codes and procedures in building, maintaining, locating and installing said diesel fuel tanks; failing to set up proper safeguards, barriers and fire protection; failing to properly promulgate proper rules and regulations; failing to set up proper and adequate training programs; the negligent and careless training of the personnel of the City of New York.

On June 11, 2002, another identical Notice of Claim was filed that added Con Ed as a claimant. On September 10, 2002, Con Ed and its insurers filed a complaint against the Port Authority alleging claims sounding in negligence. Although plaintiffs did not allege a separate cause of action for breach of contract, the negligence causes of action explicitly allege a breach of contract. Complaint, ¶ 28 ("The collapse of 7 World Trade Center and the destruction and

damage to the Con Edison substation, the equipment located therein, and equipment connecting to and from the substation, were caused by negligence, carelessness, recklessness and breach of contract"); id. at ¶ 29 ("Defendant's negligence, carelessness, recklessness and/or breach of lease was the proximate cause of, and materially contributed to, plaintiffs' damage.").

**The Complaint, 07 Civ 10582, Is Barred by Limitations**

A cause of action accrues when the factual circumstances necessary for that cause of action have occurred. Gaidon v. Guardian Life Ins. Co. of Am., 750 N.E.2d 1078, 1083 (N.Y. 2001). The destruction of the Con Ed substation gave rise to Con Ed's right to make claim against the Port Authority, and the Port Authority's concomitant duty to honor that claim and reimburse Con Ed. Unless a contract provision requires a demand, the right to sue arises when there is a duty to pay, not when demand may ultimately be made. See Swift v. New York Med. Coll., 808 N.Y.S.2d 731, 733 (App. Div. 2006) (claim for payment of a sum of money pursuant to a contract accrues when the plaintiff possess a legal right to demand payment).

Con Ed's right to sue the Port Authority accrued September 11, 2001. That was the day that Con Ed rightly fixed in its original Notice of Claim, served upon the Port Authority on June 11, 2002. The Notice of Claim, and the lawsuit thereafter filed, 02 Civ. 7188, were timely filed, and the Port Authority so concedes, although the Port Authority contests the scope of the claim thus noticed by Con Ed.

Con Ed's right to sue the Port Authority expired "one year after the cause of action . . . accrued," provided that a notice of claim is served upon the Port Authority "at least sixty days before such suit . . . is commenced." N.Y. Unconsol. Laws § 7107. Strict compliance is required. Mulligan v. The Port Authority of New York and New Jersey, No. 02 Civ. 6885, 2002 WL 31233245, at *1 (S.D.N.Y. Oct. 4, 2002); Giannone v. Port Authority of New York

and New Jersey, 511 N.Y.S.2d 940, 941 (N.Y. App. Div. 1987). Con Ed satisfied those requirements by its Notice of Claim served June 11, 2002, and by its ensuing lawsuit. These requirements cannot be avoided, or a fatal deficiency remedied, by making a late demand, and then arguing that the demand, and the refusal to honor it, gives rise to a new claim.

Con Ed characterizes its additional claim as one for indemnification and reimbursement. But the Port Authority did not indemnify another party's failure to pay. Neither its obligation to indemnify or to reimburse was dependent on any conditions other than the destruction of the substation and its machinery and equipment. Con Ed is suing the Port Authority directly, for its own acts and omissions. And the Port Authority's obligation to reimburse Con Ed was a direct obligation, not dependent on anyone or anything else. The Port Authority's obligation arose September 11, 2001, when the Con Ed substation was destroyed, provided, of course, Con Ed proves that the Port Authority breached a duty it owed Con Ed under their lease.

Con Ed cites a string of cases to support its position, all distinguishable. The cases involve suits for indemnity when the State of New York fulfills its statutory obligation to clean up an oil spill caused by another, see State of New York v. Stewart's Ice Cream Company, 64 473 N.E.2d 1184 (N.Y. 1984). Or the obligation of the defendant to pay is conditioned upon the happening of an event, see, e.g., John J. Kassner & Co., Inc. v. The City of New York, 389 N.E.2d 99, 102 (N.Y. 1979) (payment conditioned upon completion of services and audit); City of New York v. State of New York, 357 N.E.2d 988, 994 (N.Y. 1976) (comptroller's audit precondition to right to receive payment). None of these cases are applicable to the factual situation presented to me in this action.

Con Ed argues that the Port Authority's obligation to indemnify and to reimburse did not become fixed until Con Ed actually removed the debris, and rebuilt its substation and re-installed machinery and equipment – events that it alleges were completed in June 2004. But a cause of action for breach of contract does not depend on the actual liquidation of the amount of damages being claimed. It arises when the destruction, damage or injury occurs because of the defendant's breach of duty. 815 Park Ave. Owners, Inc. v. Fireman's Ins. Co. of Washington, D.C., 639 N.Y.S.2d 325, 327 (App. Div. 1996). Its date of accrual certainly is not postponed until every claim of every contractor, subcontractor and vendor is paid and every dispute settled. Moreover, the Port Authority's 2007 complaint would be barred by the one-year period of limitations even if June 2004, the completion date of the rebuilt substation, could be said to fix the accrual date of its cause of action against the Port Authority.

Con Ed argues that the $20 million payment by the Port Authority, in June 2004, constituted a waiver, or a tolling, of the one-year period of limitations, because the Port Authority has said that it is still negotiating with its insurance carrier, so the delay in demand and suit is Port Authority's doing. The payment was made, however, not within the period of limitations, but well after the right to sue had expired. A partial payment of an accrued obligation without more, after the period of limitations has expired, does not extend the period within which to file suit. Cf. Gilbert Frank Corp. v. Fed. Ins. Co., 520 N.E.2d 512, 514 (N.Y. 1988) ("Evidence of communications or settlement negotiations between an insured and its insurer either before or after expiration of a limitations period contained in a policy is not, without more, sufficient to prove waiver or estoppel"); John J. Kassner & Co., 389 N.E.2d at 551 (holding that parties have restricted ability to make agreements extending a statute of limitations

for strong public policy reasons, and holding that such an agreement will only be upheld if it is in writing, signed by the promisor, and occurs after the accrual of the cause of action).

Accordingly, Con Ed's pending suit is dismissed. The statute of limitations has run.

**Con Ed's Contract Claim Is Comprehended by Its Existing Claim; It Cannot Be Re-stated in a Separate and New Lawsuit**

Con Ed characterizes its original Notice of Claim and lawsuit against the Port Authority as a claim for "property damage as a result of the negligence and carelessness of the Port Authority," and its new claim as a claim for the Port Authority's "failure to honor its contractual obligations to indemnify Con Edison for damages caused by its acts or omissions . . . in connection with the 'construction or maintenance' of 7 WTC, regardless of its negligence". (Mtn. in Opp. at 4). Con Ed contends that these are different claims, arising at different points of time.

Con Ed also characterizes its lawsuit filed in 2007 as an exercise of "abundant caution". For reasons already discussed, Con Ed's contract claims were comprehended by its original Notice of Claim and lawsuit, filed in 2002, and arise out of the "conduct, transaction, or occurrence set out – or attempted to be set out – in the original pleading." Fed. R. Civ. P. 15(c)(1)(B). Con Ed's original Notice of Claim and original lawsuit alleged "conduct, transaction, or occurrence" that covered both its original claim, and the claim Con Ed seeks now to add. Although the original claim alleged negligence in the performance of contract obligations, the claims are sufficiently broad to encompass acts and occurrences that could give rise to obligations to indemnify and reimburse even if negligence is not proved.

Con Ed's original Notice of Claim gave the Port Authority "the time when, the place where and the manner in which the claim arose." NY Unconsol. Laws § 7108. The Notice

of Claim also described the Nature of the Claim as relating to the "negligence and carelessness of the Port Authority" in its design, installation, maintenance and operation of the diesel fuel tanks located at 7WTC, as well as the failure to implement appropriate safety procedures and adequate training for its personnel, causing damage to Con Ed's property. Moreover, the provisions of the lease have figured into the case from its inception, as the Port Authority has cited the lease in arguing that it is without liability. See Oral Arg. Transcript, 11/30/04, pp. 17-19, 28-29. And at argument in November 2004, I held that the notice of claim being litigated in this motion was sufficient to put the Port Authority on notice of the breach of contract claim. See id. at 27. The allegations in the Notice of Claim sufficiently provide the information necessary for the Port Authority to conduct an investigation, and to prepare to defend itself. Neither its investigation, nor the steps it has to take to defend itself could have varied if Con Ed described its claim as comprehending both negligent, and non-negligent, acts and occurrences. Cunninham v. New York City, No. 04 Civ. 10232, 2008 WL 1944696, at * 1-2 (S.D.N.Y. May 1, 2008) (allowing the addition of a claim because notice of claim provided enough information to put defendant on notice of claim and noting that New York courts and commentators have stated that the purpose of the notice requirement is to ensure prompt investigation and the preservation of evidence, and that the requirements for notices of claim have become relaxed over time).

Con Ed's proposal to amend, if granted, would enable Con Ed to plead claims under specific clauses of the operative lease agreement. Although the original complaint is sufficiently broad to comprehend proofs under all the relevant clauses, there can be benefit from greater clarity.

No prejudice to the Port Authority should result. Con Ed represents that discovery thus far had yields no information regarding the negotiations between the parties

concerning the choice of clauses in the lease agreement. If, because of the amendment now being authorized, the Port Authority wishes to conduct further discovery, it can apply at the end of the case for additional cost recoveries for its expenses made necessary by Con Ed's late amendment.

SO ORDERED.

Dated: June 26, 2008
New York, New York

ALVIN K. HELLERSTEIN
United States District Judge